CHAS. E. AULT, APPELLEE, v. NEBRASKA TELEPHONE COM-
PANY, APPELLANT.

FILED OCTOBER 22, 1908. No. 15,287.

1. **Master and Servant**: INJURY: FELLOW SERVANTS. Two gangs of workmen were engaged in the construction of a telephone line, each under a different foreman; the first gang digging the holes and setting the poles therein, the second gang stringing the wires on the poles. *Held*, That the parties employed in such separate employment were not fellow servants.

2. ————: ————: NOTICE: LIABILITY OF MASTER. A telephone company gave each of its linemen a printed notice setting forth their duties, and stating, among other things, that "all linemen and other employees of the company whose duties require them

to work upon or about poles are especially charged with the duty of inspecting the implements with which they work, all poles, cross-arms and wires, and must know that they are safe to work with or upon, before climbing or going upon such poles and cross-arms." *Held*, That, notwithstanding this notice, the company in the construction of new lines in which it employed two gangs of workmen, one known as "groundmen," who set the poles, and one known as "linemen," who strung the wires, could not escape liability for setting a defective pole, from the breaking of which a lineman was precipitated to the ground and injured.

3. **Trial:** INSTRUCTIONS. A judgment will not be reversed because of an instruction which, taken by itself, is ambiguous, and which in one view seems to impose on the master a greater burden than the law imposes in respect to the character of the tools and appliances furnished his servant, if such instruction is qualified by others, so as to make it apparent that the jury were not misled, and the charge as a whole correctly defines the law.

APPEAL from the district court for Saunders county: BENJAMIN F. GOOD, JUDGE. *Affirmed.*

*Greene, Breckenridge & Matters,* for appellant.

*Gilkeson & Slama* and *J. M. Galloway, contra.*

DUFFIE, C.

The defendant company was constructing a line of telephone near the town of Yutan, Saunders county, Nebraska, in the months of December, 1905, and January, 1906. Two sets of men, known as groundmen and linemen, were engaged in the construction. The groundmen set the poles, and the linemen strung the wires. Each gang was in charge of a foreman who directed the work. The plaintiff was a lineman, and was severely injured by the breaking of a defective pole, upon which he, together with his foreman, was engaged in tightening the wires at the end of the line. They were both near the top of the pole, and fell a distance of some 14 feet. The defective pole was set by the groundmen something like a week prior to the accident. The plaintiff recovered judgment, and the defendant has appealed.

A short time after entering defendant's employment, the plaintiff signed and acknowledged receipt of a printed direction and notice to employees of the defendant company, a copy of which reads as follows: "To all linemen, trouble inspectors, and all other employees whose duties require them to work upon or about poles: The duties of a lineman are, among other things, to test and inspect poles; reset old poles; set new poles; rebuild old pole lines; climb poles; paint poles; gain poles; cross-arm poles; take down old wires; string new wires; pull slack; knock out crosses; trim trees; straighten up cross-arms on poles that have been pulled out of shape; replace defective cross-arms with new ones; string and hang cables; put up guy wires; set and reset guy stubs; and in fact do everything necessary to keep pole lines, cross-arms, wires, exchange cables and subscribers' wires in perfectly safe condition and working order. All linemen and other employees of the company whose duties require them to work upon or about poles are especially charged with the duty of inspecting the implements with which they work, all poles, cross-arms, and wires, and must know that they are safe to work with or upon, before climbing or going upon such poles and cross-arms. The company does not employ other persons to make such inspection, but relies upon its linemen and such other employees to make such inspection themselves at the time, and to know that the poles, cross-arms and wires are safe for them to work upon. They must be constantly on the lookout for trouble, and at once, upon discovery, report to the manager or foreman (in writing) any trouble or defect on lines or poles that they cannot at once repair. As the occupation is a more or less hazardous one, those engaged in that line of work must at all times be on their guard and careful for their own safety, as well as the safety of those engaged in working with them, and of the general public. In exchanges where only one lineman is employed, the lineman is the foreman, and must report to the exchange manager in writing any weak or defective wires or poles which he does

not immediately repair.  Each manager is required to keep a copy of this rule and notice posted in a conspicuous place in his office.  Omaha, Nebraska, September 1st, A. D. 1903.  C. E. Yost, President.  I acknowledge that I have received and read a copy of the foregoing this 6th day of December, A. D. 1905.  C. E. Ault."  Defendant introduced the above copied paper in evidence, and insists that one of the duties of the plaintiff was to inspect all poles on which he was required to work, and that this, if it did not relieve the company of all liability for damages suffered by the plaintiff from the breaking of a defective pole, should be considered in determining whether he was negligent in failing to discover its defective condition. The defendant's contention may be best understood by a quotation from its brief: "In this case the contract between the parties with respect to the duties of the service in which the plaintiff was engaged for the defendant was wholly disregarded.  It was treated even as unworthy of consideration as evidence.  The injury to plaintiff was received while he was engaged in the work that he was hired to do, and resulted from a risk which he had assumed as a matter of express contract, for when he made the written application, and received a notice of the company's rules on the 6th day of December, it was optional with him to remain or not upon the terms which were thus imposed upon him, and by continuing in the service thereafter the rules of the company, which he acknowledged he received and with which he was familiar, became the very essence of his contract of employment.  If this is not so, then it is wholly impossible for an employer to fix the terms upon which he will employ his servants."  Whether the master may impose upon his servant duties and obligations not in line of his employment, and relieve himself from liability for negligence in furnishing reasonably safe appliances for use by the servant, is not a question of grave doubt.  That he cannot by a direct contract to that effect escape liability for negligence is well settled; such contracts being against public policy.  The state has an interest in the

lives and healthy vigor of its citizens, which it will not allow the master to endanger by contracting against liability for his negligently endangering them.

In *Consolidated Coal Co. v. Lundak,* 196 Ill. 594, the company posted notices to the effect that persons accepting employment did so with full notice that the danger from falling roofs was one of the usual risks; that the manager does not assume that the place where the employee is ordered is not dangerous, but every place is dangerous, and the duty of ascertaining and avoiding the danger is on the employee; that no employee is authorized to run any risks or in relying on the timbermen; that the company by employing timbermen does not agree to secure the roof. It was held that such notices were not rules which should govern all persons working in the mine, but were attempts to make laws under the guise of rules, and, in so far as operating as a contract against the operator's negligence, was void, as against public policy. So in *O'Neil v. Lake Superior Iron Co.,* 63 Mich. 690, it was held that posted notices reciting that the business is hazardous and that "all employees *assume* their own risks of accidents or illness, from *whatever* cause" would not exempt the employer from liability to his employees. In *Missouri, K. & T. R. Co. v. Wood,* 35 S. W. (Tex. Civ. App.) 879, a contract between a railroad company and a brakeman requiring the latter "not to attempt to couple or uncouple a car unless he knows the coupling is in a proper condition," is an attempt to impose upon the servant a duty which the law imposes on the master; that he is to see that the implements furnished are in a reasonably safe state of repair, and such contract was held no defense to an action to recover for injury caused by a defective coupling.

In the case we are considering, the evidence is clear that the defective pole which caused the accident was set a week or two prior to the plaintiff's injury. It is also established that the foreman in charge of the linemen had ascended the pole and was engaged in tightening the

wires, and that he called upon the plaintiff to come up and assist him. Under these circumstances, the plaintiff had a right to assume that the master, or those engaged by him in setting the poles, had used reasonable care and diligence in the selection of such poles as would not endanger those who were afterwards required to work on or about them in the construction of the line. It is probable that after a line is once constructed that the linemen employed by the company have the best opportunity of inspecting and discovering any defects caused by decay, storms or accidents, and it may not be unreasonable to impose upon them the duty of inspection to discover such defects or want of repair as time and weather conditions may work on the line; but we know of no rule of law which will allow the master by contract or otherwise to relieve himself from liability for negligently allowing a dangerous condition to be created by one set of employees engaged in one employment, and this dangerous condition imposed upon another set of employees engaged in a different employment. The court did not err in refusing the first instruction asked by the defendant to the effect that the defendant would not be liable, if the evidence disclosed that the nature of the work *or the contract of employment* made it the duty of the plaintiff to make inspection and discover defects, if a reasonable inspection would have discovered that the pole in question was unfit for use.

The fifth instruction of the court, relating to the duty of the master in furnishing his servant with tools and appliances and a place to perform his work, is in the following language: "It is the duty of the master to provide his servant with a reasonably safe working place, and with reasonably safe tools and appliances with which to work, and if he fails in this regard and the servant is injured in consequence of the negligence of his master to so provide for his servant, and the servant, without fault on his part, sustains injuries in consequence of such failure, then the master is liable for such injury." We cannot approve the

language of this instruction; at best, it is ambiguous and, if standing alone, liable to mislead. If the jurors understood the court by the use of the word "negligence" found between the words "the" and "of" in said instruction, to mean the neglect or failure of the master to furnish safe tools and appliances, then they were given a wrong impression of the liability imposed upon the master by the law; but, if they understood that the court by the use of the word "negligence" meant a negligent failure on the master's part to cause proper inspection of the tools and appliances furnished and to use reasonable care in that respect, then the instruction contains a correct exposition of the law and they were not misled. In view of what the court told the jury in other instructions, it is wholly improbable that the jury were misled or could understand that liability would be cast upon the defendant, unless it was established that it failed to use ordinary care in providing a reasonably safe working place and reasonably safe appliances for its employees. In stating the case to the jury, the court told them that the charge against the defendant was that it "negligently and carelessly caused to be set in the ground a pole which was defective and unfit for use." And in its third instruction the jury were told: "In order to recover in this action, the plaintiff must prove by a preponderance of the evidence the following material facts: First, that the defendant negligently set a telephone pole which it knew or ought to have known to be defective and unfit for use; * * * third, that such injuries were sustained by the plaintiff in consequence of the defendant's negligence in setting said defective telephone pole and commanding the plaintiff to work thereon." The fourth instruction defines negligence in the following language: "The jury are instructed that negligence may consist in either failing to do what, under the circumstances, a reasonable and prudent man would ordinarily have done or in doing what a reasonable and prudent man would not have done." A part of the eighth instruction is in the following lan-

guage: "In going about and performing his work the plaintiff had the right to assume that the defendant had exercised reasonable care to furnish him a reasonably safe working place, and he was not required to suspect that the defendant had been guilty of negligence, or to make such investigation or inspection as would be prompted only by the suspicion that the defendant had omitted to perform its duty." In the eleventh instruction it is said: "If the jury believe from the evidence that the defendant company negligently set a defective pole, which it knew or, by the exercise of reasonable care, ought to have known to be defective and unfit for use, * * * and the plaintiff sustained injuries in consequence of the negligence of the defendant company, as by plaintiff alleged, and without negligence or fault of plaintiff, then plaintiff should recover." The instructions taken all together plainly inform the jury that the charge against the defendant was that it negligently set a defective pole, and that this charge could not be sustained unless the evidence established a failure on the part of the defendant to use ordinary care in selecting such poles as were reasonably safe for use.

A careful consideration of the whole record, not only by the commission, but by the court, convinces us that no reversible error was committed by the trial court, and that its judgment ought to be affirmed. We so recommend.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.