PETER E. OLSON, APPELLANT, V. NEBRASKA 'TELEPHONE COMPANY ET AL., APPELLEES.*

FILED MARCH 20, 1909.   No. 15,574.

1. **Master and Servant: CONTRACT: VALIDITY.** A contract by which a master seeks to impose upon his servant duties and obligations which the law imposes upon the master, and to relieve the master from liability for negligence on his part, is against public policy and void.

2. **Negligence: QUESTION FOR COURT.** Where the question of negligence is presented by the pleadings, and there is no conflict in the evidence, and but one reasonable inference can be drawn from the facts, the question is for the court: *Brady v. Chicago, St. P., M. & O. R. Co.*, 59 Neb. 233.

3. **Electricity: ELECTRIC LIGHT COMPANIES: NEGLIGENCE.** Where the ordinances of a city require an electric light company to maintain its electric light wires in a taut condition to avoid swinging contacts, and to keep such wires properly insulated, and, wherever it is necessary for such electric light wires to cross the line of a telegraph or telephone line, to string its said wires at a distance of not less than five feet from the wires of said telegraph or telephone line, a failure on the part of said electric light company to comply with all or any of such requirements is negligence which will render it liable to any person who, without fault on his part, is injured by reason thereof.

4. **Master and Servant: INJURY: QUESTIONS FOR JURY.** And in such a case, where the defenses of assumption of risk and contributory negligence are relied upon, it is error to withdraw the case from the jury, unless such defenses are established by evidence so clear that reasonable men would not be warranted in reaching a different conclusion.

---

* Rehearing denied. See opinion, 85 Neb. ——.

APPEAL from the district court for Douglas county: LEE S. ESTELLE, JUDGE. *Reversed.*

*E. T. Farnsworth,* for appellant.

*Greene, Breckenridge & Matters, contra.*

REESE, C. J.

This action was brought in the district court for Douglas county against the defendants Nebraska Telephone Company, which, for brevity, we shall designate the "Telephone Company," and the Omaha Electric Light & Power Company, which we shall designate the "Light Company," to recover for personal injuries which plaintiff claims to have received on or about June 28, 1906. The allegations of the petition substantially are that plaintiff was employed by defendant telephone company as a "ground man"; that his duties were to assist in stringing cables along the street for the purpose of suspending them to upper ends of the poles; that he was not acquainted with the danger attending the work of hanging the cable, and only consented to perform that work temporarily; that this work necessitated his working at a height of about 30 feet from the ground; that the telephone company negligently and carelessly provided him with a metallic car for the purpose of doing said work, well knowing that the same was not a safe and proper seat for performing said labor when said seat or car was likely to come in contact with the live wires of the light company where the same "intersect each other"; that defendant telephone company "negligently and wilfully required plaintiff to work upon said car, without it having any covering, insulation or protection whatever to prevent plaintiff while working on the same from coming in contact with any live wires which might be allowed to remain out of repair, and near said telephone wires"; that while performing said work he was proceeding north on Twenty-fourth street, and as he approached certain cross-wires of the light company,

and not knowing that they were in any way unsafe, and while seated upon the car furnished by the telephone company, and using all care and precaution on his part to avoid injury, he turned partially around in said car for the purpose of examining an apparent defect in one of the overhead hooks or fastenings which he had just passed, and while his attention was directed to said hooks an electric light wire, "which said defendants had carelessly, wilfully and negligently permitted to become and remain unprotected and out of place, and in contact with the wires of said telephone company, swayed and moved against said metallic car upon which plaintiff was seated, thereby conveying a heavy and dangerous current of electricity to said car and over said wires, and his hand came in contact with said wires, and thereby was formed what is termed and known as a short circuit between said wires and said metallic car and the body of this plaintiff, and he received thereby and therefrom an electric shock, which overcame and overpowered him to such an extent that he was rendered unconscious, and he lost his hold on said car and was thereby forcibly and violently thrown to the ground, breaking his left leg below the hip and receiving what is known as a compound fracture of said limb," and other serious injuries; "that the defendants carelessly and negligently failed, omitted and neglected to give plaintiff any notice or warning of the unprotected and unsafe condition of said electric light wire and to warn him of the fact that said wires crossed the telephone wire within a few inches therefrom and rendered same unsafe"; that he had no knowledge whatever that said wires were dangerous or in a dangerous condition, and had no knowledge whatever that there was any danger in working near the same; that defendants had ample notice of the dangerous condition of said wires; that plaintiff was free from any negligence, heedlessness or want of precaution on his part; that prior to the injury he was a robust, healthy man, of the age of 24 years, and that his earning capacity

50

was the sum of $3 a day; that the injury he received had rendered him a cripple for life, for all of which he prayed damages. The separate answers of the defendants denied generally the allegations of plaintiff's petition, and pleaded assumption of risk and contributory negligence. The reply is a general denial.

There is really no conflict in the evidence as to any of the matters inquired of on the trial. It shows that at the time plaintiff received the injuries complained of the defendant telephone company was inclosing its wires along Twenty-Fourth street in a lead cable, about 1¼ inches in diameter. This lead cable was suspended from a strong woven wire called "the messenger," and ran parallel with and about six inches below the messenger wire, being supported at short intervals by wire hooks, somewhat in the form of a figure 8, so that the cable would be permanently suspended from and supported by the messenger wire. It would appear that the linemen who had strung the cable had placed the wire hooks in position, but had not securely fastened them, and at the time of the injury it was plaintiff's work to pass along that wire and with a pair of metal plyers securely fasten the hooks. In order to do this he was seated on an iron saddle with an iron frame extending to the top of the messenger wire and attached to a wheel which ran upon the wire. The saddle was provided with a wooden seat. After fastening a hook he would pull himself along to the next and repeat the operation. The telephone wires ran north and south along the west side, and the electric wires of the light company along the east side, of Twenty-Fourth street. At the intersection of Twenty-Fourth and Grant streets one or more of the electric light wires crossed Twenty-Fourth street, some of the witnesses say diagonally, and passed under the telephone wires. Plaintiff was working northward. When he had reached, or nearly reached, the electric light wires, he turned partially around in his saddle to remedy some defect which he had discovered in the fastening which he had just passed, or

was just passing. While in the act of doing this, the witnesses say there was a flash, and plaintiff received an electric shock which caused him to fall from the saddle to the pavement below, a distance of about 30 feet. He was picked up in an unconscious condition and taken to a hospital. His injuries are clearly shown to have been very severe and of a permanent character.

Defendants introduced in evidence as exhibit 3 an accepted notice to linemen, an exact copy of which will be found set out in the opinion of Mr. Commissioner DUFFIE in *Ault v. Nebraska Telephone Co.*, 82 Neb. 434, and which, on account of its length, we will not repeat here. Defendants also introduced in evidence as exhibit 2 an application of plaintiff for employment by defendant telephone company. When plaintiff rested, the defendant telephone company moved the court to direct a verdict in its favor, basing said motion upon exhibits 2 and 3, above referred to, which motion the court sustained. This was error. The application, exhibit 2, corroborates plaintiff's contention that, when he was employed by the defendant telephone company, it was as a ground man. Exhibits 2 and 3 having been both signed by plaintiff on the same day, viz., February 20, 1905, it is evident that exhibit 3 was handed to plaintiff at the same time that he filed with the defendant telephone company exhibit 2. Conceding that exhibits 2 and 3 would be binding upon plaintiff, they could only be binding upon him in his employment as a ground man. Plaintiff might be willing to assume all responsibilities said to be placed upon him by exhibit 3, while working as a ground man, but be unwilling to assume such responsibilities while suspended in the air 30 feet above the pavement, and it may well be assumed that when he commenced the work of "riding the cables," about two weeks prior to June 28, 1906, all recollection of papers which he had signed on the 20th of February of the year previous, a year and four months, had passed from his mind. The evidence shows that, prior to commencing work for the defendant telephone

company in Omaha, he had worked for the same company in other parts of the state; the city of Seward being named as one of the places where he had so worked. It is very evident that the papers, exhibits 2 and 3, were signed by him at the time he began this outside work for the telephone company, where no such dangers as attended his employment on Twenty-Fourth street in the city of Omaha were present. Under such circumstances, the court was not warranted in deciding as a matter of law that exhibits 2 and 3 precluded a recovery by plaintiff.

But there is another reason why exhibit 3 should not have been held as a matter of law to constitute an absolute defense to plaintiff's action. As above shown, this same accepted notice, of this same defendant, was under consideration by this court in *Ault v. Nebraska Telephone Co., supra.* In considering that document, this court, speaking through Mr. Commissioner DUFFIE, said: "Whether the master may impose upon his servant duties and obligations not in line of his employment, and relieve himself from liability for negligence in furnishing reasonably safe appliances for use by the servant, is not a question of grave doubt. That he cannot by a direct contract to that effect escape liability for negligence is well settled; such contracts being against public policy. The state has an interest in the lives and healthy vigor of its citizens, which it will not allow the master to endanger by contracting against liability for his negligently endangering them." The reasoning of the commissioner is well supported by his citations and many others. See 26 Cyc. 1094, and note 9. We have again considered the question, and are unanimously of the opinion that the rule is sound and salutary that any contract by which an employer seeks to impose upon his servant duties and obligations which the law imposes upon him, and to relieve himself from liability for negligence on his part, is against public policy and void.

After sustaining the motion of defendant telephone company to direct a verdict in its favor, the trial proceeded as against the defendant light company. A motion by the light company for a directed verdict was overruled and the case submitted to the jury, who returned a verdict in favor of defendant. Upon that branch of the case plaintiff contended that, exhibits 2 and 3 having been entered into between plaintiff and defendant telephone company, the defendant light company was not entitled to any benefit which might flow therefrom. This point was overruled by the court, and defendant was allowed in argument to the jury to discuss the two exhibits referred to. In this it seems to us that the trial court was inconsistent. If the defendant light company was entitled to the benefit of exhibits 2 and 3, it was entitled to such benefit to the same extent as the defendant telephone company. If it was not entitled to the benefit to the same extent as the telephone company, then it was not entitled to any benefit at all, and plaintiff's contention should have been sustained.

But, aside from this, there are other good reasons why the judgment in favor of the defendant light company cannot be sustained. There was introduced in evidence the "rules and requirements of the electrical department of the city of Omaha for the installation and operation of electric wires and apparatus." These rules appear in ordinances passed by the mayor and city council of the city, the regularity of which is not questioned. Rule 28 provides: "Wires must cross each other at right angles as near as possible, and, where it can be done, must cross on arms secured to poles or fixtures." * * * "Wires must be drawn taut to avoid swinging contacts, and in such cases the stretches must be short." Rule 30 provides: "Telegraph, telephone, and all other wires of like character must not be attached to the same arm with electric light and power wires, and, when possible, must run on a separate line of poles and fixtures. When running on the same poles wires must be kept at all points

five feet apart." Rule 33 provides: "All wires designed to carry an electric light or power current must be covered with a substantial, high-grade insulation not easily worn by friction, and whenever the insulation becomes impaired it must be renewed at once." Rule 46 provides: "That wires used as conductors for electric lighting purposes, and supports for the same, shall be erected or placed along the opposite side of any street or alley that is occupied by the wires of any fire alarm and police telegraph, telegraph or telephone company." Rule 47 provides: "Whenever it is necessary for an electric light conductor to approach or cross the line of any fire alarm and police telegraph, telegraph or telephone line, the same shall not approach or cross at a distance of less than five feet either above or below said fire alarm and police telegraph, telegraph or telephone wire, and shall be securely fastened on supports placed as near as practicable to said fire alarm and police telegraph, telegraph or telephone lines, or shall be carried in troughs or boxes across the route of said fire alarm and police telegraph, telegraph or telephone line, so constructed and placed as to prevent the electric light and police, telegraph or telephone lines coming in contact in case either should break or become detached from fixtures."

Thomas Olson, brother of plaintiff, testified that, when his brother was injured, he was telephoned to, and arrived at the point where the injury occurred some 15 or 20 minutes thereafter; that he made an examination of the wires while standing upon the pavement below, which would be a distance of about 28 to 30 feet from the wires; that the electric wires crossed about 12 inches below the telephone wires. As to the condition of the wire his testimony is as follows: "Q. What was the condition of the wire, if you know, at the place where it was near the telephone wire? A. The insulation, for one thing, was all worn off. The wire was bare where this car was standing up against the wire. I noticed that in particular. Q. Noticed the car near the wire? A. It was standing up

against the wire. The wire was touching this car at that time, and the wire was bare. Q. You may state the condition of that electric light wire, with reference to being tight or slack or otherwise. A. It was very slack. Q. State whether or not the wire that you speak of was inclosed in a trough. A. It was not."

The witness Yost testified that on the day of the accident he examined the place, and that his attention was called to the electric light wire. "Q. You may tell the jury the condition of that wire, as nearly as you can. A. The electric light wire, the insulation, the wrapping, was off of it badly along there, and it was—well, as near as I could judge from the ground, it was from, I should say, 12 to 18 inches from the telephone wire. Q. Did you notice the wire, as to whether it was tight or not? A. It was not tight."

The witness Leo Huntley, who was passing along the street just before plaintiff met with the injury, had stopped and was watching plaintiff and saw him fall. He testified: "I seen him fixing the wires there. Then he turned around to fix some of the others they had there, and there was a flash, and then he fell. Q. Did you notice this electric light wire particularly then, with reference to its being tight or slack? A. It was slack." On cross-examination we have the following: "Q. Was there anybody moving the electric wire there? A. It was moving around up there. It was swinging around up there— Q. Who was moving it? A. I do not know. I guess the wind was."

This testimony by these witnesses stands entirely uncontradicted. No attempt was made by the defendant light company to disprove the testimony that its wires at the point where they crossed the wires of the telephone company were only separated therefrom by a distance of from 12 to 18 inches, instead of 5 feet, as required by the ordinances of the city; that the insulation at that point was worn off and entirely gone from their wire, in violation of the requirements of the city ordinances, and that

their light wire was loose and swinging, instead of being taut, as required by the ordinances of the city.   In the light of this uncontradicted testimony it was the duty of the court to charge the jury as a matter of law that the defendant light company was guilty of negligence in these particulars; but, instead of so doing, the court gave instruction number 5 as follows:   "It is made the duty of the Omaha Electric Light & Power Company to cause all their wires which carry a current of electricity, to be covered with a substantial, high-grade insulation, not easily worn by friction, and, whenever the insulation becomes impaired, it must be renewed at once, and, if you find from a preponderance of the evidence that at the point mentioned in plaintiff's petition the wire of the defendant Omaha Electric Light & Power Company was not covered with a substantial, high-grade insulation, but that it had become worn and exposed, and that it came in contact with the chair or car on which the plaintiff was riding, then you should take all those circumstances into consideration in determining the question as to whether or not the defendant was guilty of negligence."   The giving of this instruction was error.   Plaintiff was entitled to have the jury told as a matter of law that all of the facts set out in instruction number 5 had been established by the uncontradicted evidence and that they established negligence on the part of the defendant light company. In *Union P. R. Co. v. McDonald,* 152 U. S. 262, which was an action for personal injuries, the trial court instructed the jury as a matter of law that the defendant was guilty of negligence and submitted to them the question of contributory negligence.   A verdict and judgment in favor of the plaintiff for $7,500 was sustained by the supreme court.   The court by Harlan, J., say:   "Upon the question of negligence, the case is within the rule that the court may withdraw a case from the jury altogether, and 'direct a verdict for the plaintiff or the defendant, as the one or the other may be proper, where the evidence is undisputed or is of such conclusive character that the

court, in the exercise of a sound judicial discretion, would be compelled to set aside a verdict returned in opposition to it.'" This is quoted and approved in *Southern P. Co. v. Pool,* 160 U. S. 438.

By instruction number 7, the court said: "Negligence is the failure to exercise such care, prudence and forethought as under the circumstances duty requires should be given or exercised. It may consist of the omission to do something which a reasonable man, guided by those considerations which ordinarily regulate the conduct of human affairs, would do. Such negligence on the part of the plaintiff, which is the proximate cause of his injury, would defeat a recovery." Ordinarily this instruction might probably be sustained, but in the present case, considering the disposition which had been made of the case as to the defendant telephone company and the submission to the jury of the question of defendant's negligence by instruction numbered 5, we think the last sentence in instruction numbered 7 was calculated to mislead the jury. After defining negligence in the first part of the instruction, the court said: "Such negligence on the part of the plaintiff, *which is the proximate cause of his injury,* would defeat a recovery." We think the words italicized should have been omitted or the phraseology materially changed. If the word "if" had been substituted for the words "which is," it would to some extent have relieved the sentence from a possible construction by the jury that the court by the words used was saying to them that the plaintiff had been guilty of *such* negligence and that it "*is* the proximate cause of his injury." We think there is considerable force in the contention made by plaintiff in his brief that "this instruction leaves nothing for the jury to consider, because it says in so many words that it was Olson's negligence that caused the injury."

Without setting out in full, we do not think that instruction numbered 4 should have been given in the language used. There was no question about plaintiff's right

to be where he was at the time of the injury. The defendant light company had a right to assume, in fact it knew, that the defendant telephone company would from time to time be sending men up its poles and stringing wires at the point where the lines crossed, and, for these reasons, we think that instruction numbered 4 was calculated to confuse, rather than aid, the jury in their deliberations.

Instruction number 9 is complained of by plaintiff, but the error in that instruction, if any, was without prejudice, as the jury never reached the question of the extent of plaintiff's injury.

The question as to whether or not plaintiff was himself guilty of negligence in the matter was, notwithstanding exhibits 2 and 3, clearly a question for the jury, and would have been submitted to them as to both defendants. Conceding that it was his duty to be on the lookout for any defects or dangers incident to his employment, it does not follow that he was required to be on the lookout for dangerous situations, the existence of which he had no reason to suspect, and which the ordinances of the city expressly forbade. Under the evidence before them, the jury would be justified in finding that plaintiff had no reason to suspect that he would come in contact with electric light wires at all, and would not have done so if the defendant light company had strung its wires at the intersection five feet above or below the wires of the telephone company; that the accident would not have occurred if the electric wires had been strung taut, as required by the ordinances; that, if they had been so strung, there would not have been the swinging motion testified to by the witnesses, which possibly caused the wire to come in contact with the iron seat upon which the plaintiff was riding; and that the accident would not have occurred if the wires had been properly insulated, as required by the city ordinances. All of these facts, together with the fact that plaintiff while riding on the car, after passing one of the hooks, partially turned in his seat to complete

the fastening of the hook, or to do something else which his observation led him to believe ought to be done, and the fact that the saddle may have moved forward slightly while he was so turned in his seat, and the further fact that at that time the wind was blowing dust in his eyes, as he testifies, were questions for the jury to consider, under proper instructions, in determining whether or not plaintiff was himself guilty of negligence in failing to observe the uninsulated and slack condition of the electric light wire and its close proximity to the telephone wire or to the iron seat upon which he was riding.

For the errors above enumerated, the judgment of the district court is reversed as to both defendants and the cause remanded for further proceedings in harmony herewith.

REVERSED.

BARNES, J.

I dissent from so much of the opinion as reverses the judgment as to the Nebraska Telephone Company, and concur in the remainder of the opinion.