# CASES DETERMINED

IN THE

# SUPREME COURT OF NEBRASKA

## SEPTEMBER TERM, 1916.

JOSEPH MAUCHER, APPELLEE, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, APPELLANT.

FILED SEPTEMBER 22, 1916. No. 18721.

Carriers: LIABILITY. The contracts pleaded as a defense examined, their substance set out in the opinion, and *held* not to relieve defendant from liability under the facts shown by the record.

APPEAL from the district court for Douglas county: ALEXANDER C. TROUP, JUDGE. *Affirmed.*

*W. D. McHugh, W. H. Herdman* and *John M. Kelley*, for appellant.

*Mahoney & Kennedy, contra.*

MORRISSEY, C. J.

Plaintiff brought this action against defendant to recover damages for personal injuries alleged to have been sustained in a rear-end collision on defendant's line of railroad August 12, 1913. There was a verdict for $12,500, which on motion for a new trial was reduced to $10,000, and defendant has appealed.

Defendant was, and is, a railroad company engaged in general railroad business, both intrastate and interstate. At the date of the injury plaintiff was an employee of a circus company known as "Barnum and Bailey Shows," but owned by Ringling Brothers, a copartnership. The day preceding the injury the circus company gave a performance in the city of Lincoln, Nebraska, and on the evening of that day loaded its cars with its circus equip-

ment, baggage, and paraphernalia, and its employees.
The cars belonging to the circus company were attached
to a locomotive engine and way-car belonging to defend-
ant. The engine crew and train crew were made up of
the regular employees of defendant. As thus made up,
this circus train started for Atlantic, Iowa, where the
circus company was to give an exhibition the following
day. The train passed eastward over defendant's tracks
and passed South Bend, an open telegraph station. Rich-
field, about twelve miles farther east, was the next open
telegraph station, and the stretch of track between these
two stations constituted a "block." Shortly after the
circus train left South Bend one of defendant's regular
passenger trains arrived at that station, and received a
"block" restriction card, which required the engineer to
proceed at no greater speed than would permit a com-
plete stop at any time within the range of track which
was open to his vision. This "block" has a number of
cuts and curves. The engineer failed to obey the re-
striction order and, as a consequence, ran his engine into
the rear end of the circus train as it pulled onto a side-
track at Richfield. As a result of this collision plaintiff
received severe and perhaps permanent injuries.

There is practically no dispute as to the facts, but
defendant denies liability, relying upon certain contracts
set out at length in the pleadings. One of these is a
contract between the circus company and defendant, where-
by defendant undertook to transport the property of the
circus company, consisting of its cars and other equip-
ment, from point to point along its line of road, including
the transportation from Lincoln, Nebraska, to Atlantic,
Iowa, on special time schedules and at reduced rates.
The employees of the circus company were to be con-
veyed in the cars of the circus company in the same train
with the baggage, paraphernalia, and other equipment.
This transportation was to be made by defendant furnish-
ing to and for the use of the circus company the neces-
sary locomotives, the fuel therefor, the engine and train

crews and other necessary employees, and granting the right to use defendant's tracks. Among other stipulations contained were the following:

"It is expressly agreed and understood that this agreement is not made by the first party as a common carrier, but only as a hiring of said locomotives, engines and employees, and the use of its railroad to the second party, for the purpose of enabling the second party to move said train between said points; that all of the said cars, coaches and trains shall be operated under the management, directions, orders and control of the second party or its agents.

"It is expressly understood and agreed that all engineers, firemen, conductors, brakemen, train dispatchers and other operators and employees, furnished by the first party, are, in the operation and movement of said cars, coaches, and trains, exclusively the employees of the second party, but all of said cars, coaches, and trains shall be run according to the rules, regulations and time cards of the first party.

"It is expressly understood and agreed in consideration of the first party hiring the use of its railway and furnishing the motive power and employees to handle the second party's cars, coaches, paraphernalia and employees, as aforesaid, and for less than it would receive if it handled said circus cars, paraphernalia, menagerie and employees, as regular freight and passengers upon its cars, and in consideration of the privilege of stopping over at the points hereinbefore designated, that the first party shall not be responsible or liable to the second party, or to any other person, partnership or corporation for any delay of any cars or trains, however caused, and whether or not arising in any way from any one's fault or negligence, of or for any loss, damage or injury to the property or person of the second party or of any one employed by the second party, or being upon any trains or cars, hauled under this agreement or being upon any premises of the first party or connected in any way with said circus,

caravan or menagerie, or with the business of the second party, or for any loss of or damage or injury to the property or person of any one else, or of any partnership or corporation whatsoever, whether or not any such loss, damage or injury arises in any way from, or is in any degree attributable to, any fault or negligence of the first party or any of its officers, agents or employees, in or about the performance of this agreement, or the performance of the first party's general business or in connection with the railroad or property or any duty whatsoever of the first party.

"The second party further agrees and undertakes, as a further consideration hereof, that in case of delay, loss, damage or injury, to the person or property, either of the second party or any other persons, association of persons or corporation, carried or to be carried upon any of the cars or trains herein specified or employed on or about or in connection with the same on the business of the second party, it, the said second party, will release and does hereby release the first party from all liability or claim therefor for loss, damage or injury to itself or its business or property, will indemnify and forever save harmless the first party from all claim, demand, actions, causes of action, costs, judgments, and expenses, including attorney's fees, resulting from or growing out of such delays, loss, damage, or personal injury, the second party hereby assuming and agreeing to defend at its own cost all such claims, demands and actions, and to satisfy and pay the same, and the second party further undertakes and agrees to inform by personal notice, to each thereof, all of the persons permitted by the second party to be carried on any of said cars, coaches, and trains, under the terms of this agreement, and to advise and notify all such persons, and each thereof, that they are carried by the second party and not by the first party, and that the first party has not assumed, with respect to them or their baggage or other personal property, any of the duties and responsibilities of a carrier of passengers.

"It is a further consideration of this agreement, and the parties hereto agree, that the second party is to have sole charge of every person and of all animals and property on any car, coach or train hauled under said agreement, and the first party does not assume, and shall be under no responsibility for the safety of any of the cars, coaches, persons, animals or property on said cars, coaches, and trains, in charge of the second party, or of advance agents, from any cause whatever, and the second party agrees to, and does hereby, indemnify and save harmless the first party against all loss, damage or injury on account of strangers, tramps, or others riding on said cars, coaches or trains, and being injured or killed, or on account of strangers, tramps or other persons being injured or killed in the operation of said cars, coaches or trains, or in the handling, loading or unloading of cars, and will protect the first party from damages, and cost incident thereto, suffered by any one from wild, tamed or domesticated animals escaping from cars or custody, and protect the first party against all loss, damage and cost for and on account of the spread or transmission of any disease to persons or animals from unloading offal or otherwise, and against any fine or penalty arising therefrom, which may be imposed against the first party by any state, municipality or other competent authority."

This contract was made in the state of Illinois, and is claimed to be valid under the laws of that state.

At the time of the injury plaintiff was an employee of the circus company, and, as such employee, was riding on this circus train without having paid, offered to pay, or intending to pay, any transportation whatever, and his right to be thereon was due to his employment, under a contract which he had with the circus company. The train was being moved and operated over the track of defendant in pursuance of the contract heretofore partially set out.

Before entering the employment of the circus company, to wit, June 9, 1913, plaintiff had entered into a

100 Neb.—16

contract in writing with the circus company, containing the following stipulations: "Now, therefore, for valuable consideration, and in consideration of this employment, and the furnishing by first party to second party of transportation and board of the kind customary and usual in the circus business, and in consideration of special personal benefits and advantages beyond the scope of employment inuring to second party herein, the second party accepts and assumes the increased hazard of railroad travel and circus service in all particulars and circumstances, and hereby exempts and releases first party from all claims for injuries, accidents, sickness and damages of whatsoever nature sustained in said service, whether due to negligence (including gross negligence) of first party, their employees, agents or bosses, or the negligence of any employee or agent of any railroad company transporting first party, when said second party is traveling on or using transportation furnished by any railway company under contract with first party; and second party, recognizing said privity in railroad transportation, hereby renounces his rights as 'passenger' in traveling on any railroad line while in said service, and releases all such railroad companies from claim on his part for any damage or injury whatsoever; and second party agrees to protect, indemnify and hold harmless first party and to pay the first party (and when notified to personally assume payment of) all sums which first party may be subject to pay in consequence of any claim by, or injury, sickness or death to, second party; and second party hereby releases first party from any claim he may in the future have due to or growing out of any injury received in said service either as against first party or any railroad company, hereby binding himself, his heirs, executors and assigns firmly by these presents."

Defendant pleads this contract, together with its contract, heretofore partially set out, with the circus company, and alleges that they are valid and binding upon plaintiff, and a full, adequate and complete defense to

his cause of action, alleges that the transportation furnished was interstate transportation, and that the contract and its construction and effect are to be determined solely by the legislation of the United States, and the public policy thereof respecting interstate carriers and interstate transportation, and defendant pleads, and relies upon, as a defense to this action, the contracts pleaded and the laws and policies of the United States in relation to interstate transportation and the carriers thereof.

Defendant further says that the engine and train crews operating the circus train on which plaintiff was riding were the employees of the circus company and not the employees of the defendants, and points out and relies on the clause of the contract between defendant and the circus company which provides:

"The first party agrees to furnish to and for the use of the second party  *  *  *  the engineers, firemen and other employees  *  *  *  for the transportation of said circus, menagerie, employees and equipment of the second party by train  *  *  *  from  *  *  *  Lincoln, Neb., to Atlantic, Ia.

"It is expressly understood and agreed that all engineers, firemen, conductors, brakemen, train dispatchers and other operators and employees, furnished by the first party, are, in the operation and movement of said cars, coaches and trains exclusively the employees of the second party, but all of said cars, coaches, and trains shall be run according to the rules, regulations and time cards of the first party."

Defendant follows this with an allegation of negligence on the part of the engine crew and train crew of the circus train in failing to observe and obey rule 99 for protection against rear-end collisions such as occurred in this case, and alleges that plaintiff's injury is due to such negligence, and alleged that plaintiff by his contract made with the circus company had fully released both the circus company and the defendant from any liability for injuries he sustained.

By reply plaintiff admitted signing the contract pleaded, but alleged that he did not receive a copy or duplicate thereof, and that when he signed the same he was not aware that he was executing a release from liability of any railroad company upon whose lines he might have occasion to travel. He alleges that the contract, in so far as it undertakes to relieve the defendant from liability for the injuries he received, is against public policy and is void.

The assignments of error are subdivided many times; but the real contention of defendant is that under the contracts set out defendant is relieved of liability; that the court ought to have instructed a verdict in its behalf; and that it was error for the court to submit instruction No. 3, which, after reciting the substance of the contracts pleaded, concluded as follows:

"In this behalf you are instructed that, in so far as the first contract herein mentioned provided that the agents, servants and employees furnished by the defendant to the circus company and engaged in the operation and movement of said train and cars in the transportation of said circus company's property and employees, at the time referred to, were to be regarded as exclusively the employees of the circus company, except the said cars and train should be run according to the rules, regulations and time card of said defendant, the same may be considered by you as valid and binding between the parties, in so far as this particular action is concerned, and you may therefore assume as a fact conclusively established that the employees aforesaid were, at all times referred to, the servants and employees of the said circus company exclusively and not those of the defendant, and that therefore their acts while so employed in the management, operation and control of said circus train, would be the acts of the circus company and not those of the defendant herein, and any negligence, if any there was on the part of the said agents or employees of said circus train, will not be attributable to the defendant railway company"—and lastly that the judgment is excessive.

It may be noted that in the contract between plaintiff and the circus company plaintiff renounces his rights as a "passenger," but the contract also recites that plaintiff has knowledge that the circus company has contracted with the railroad companies over whose lines they travel to hold them harmless even for their gross negligence, and that this stipulation applies especially to the plaintiff. It is also recited that such railroad company is acting as a private carrier. When we consider the language of this contract wherein plaintiff purports to recognize the railroad company as a "private carrier," and also to renounce his claim as a "passenger," it would appear that he was releasing only such claims as he would have if the railway company were rendering service as a common carrier and he was being transported as a passenger. The trial court took the view that liability arose independently of the relation of carrier and passenger. Conceding that the train on which plaintiff was riding was operated by the employees of the circus company, and that the train crew was then in the employ of the circus company and not in the employ of the railroad company, yet the evidence clearly shows that passenger train No. 6, which, in violation of the rules of the company, ran into the circus train and caused the injury to plaintiff, was a train operated and controlled by the defendant company. Neither plaintiff nor any of the crew of the train on which he was riding are shown to be guilty of negligence, while the grossest negligence* may be attributed to the crew of passenger train No. 6. The trial court took the view that the crew of the circus train might be regarded as the employees of the circus company, and charged the jury that plaintiff could not recover unless his injuries were due to the negligence of the crew operating the other train. By his instructions he denied plaintiff the right to recover under the law of Nebraska fixing the liability of a common carrier to a passenger. Without deciding that the contract may be given this broad and liberal construction, suffice it to say, that in

view of the verdict rendered and the condition of the record neither party has been prejudiced. Independently of plaintiff's rights as a passenger, if any he had, he was lawfully upon defendant's tracks and was injured by its negligence. The trial court gave the contract full force in that it recognized defendant's claim to the private character of the transportation and plaintiff's renunciation of his rights as a passenger, and limited the recovery to an affirmative showing of negligence upon the part of the passenger crew.

Contracts whereby an employee is induced to waive or sign away his rights under the law should always be stiictly construed. Under the construction placed upon it by the trial court, plaintiff waived his rights as a passenger and consented that the train on which he rode might be considered as a private conveyance, but "that in so far as said contracts aforesaid, or either of them, undertakes to exonerate and release the defendant herein from its acts of negligence in or about the performance of the defendant's general business in the operation of its roads and trains, and to exempt and relieve defendant from any liability for personal injury to any employee of the circus company, and particularly to the plaintiff herein, resulting from the negligence of the defendant as to the proximate cause thereof, the same is void and of no effect." Instruction No. 4.

The jury were told that, unless the train crew in charge of the passenger train No. 6 were guilty of negligence in running that train into the circus train, plaintiff could not recover. It will be seen that, while the contract was not held void *in toto,* the court did hold, and we think properly so, that the contract did not give the defendant company the right to wantonly maim the plaintiff. He was lawfully on its right of way, if not as a passenger, he was at least a licensee.

It is the contention of the appellant that the circus train constituted an interstate shipment, and therefore these contracts must be governed by the federal law. If

governed by the federal statutes at all, they must fall within what is commonly known as the Carmack Amendment to the Elkins law. 34 U. S. St. at Large, ch. 3591, pp. 593-595. This statute expressly provides that "no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed." By another provision of the act it is provided the shipper may for a valid consideration limit the value of his freight, but he is not permitted to release the railroad entirely from liability for its negligence. The act nowhere provides that a railway company may exempt itself from liability for negligently maiming or killing any person.

"That a common carrier cannot exempt himself from liability for his own negligence or that of his servants is elementary. * * * The rule of the common law did not limit his liability to the loss and damage due to his own negligence, or that of his servants. That rule went beyond this and he was liable for any loss or damage which resulted from human agency, or any cause not the act of God or the public enemy. But the rigor of this liability might be modified through any fair, reasonable and just agreement with the shipper which did not include exemption against the negligence of the carrier or his servants. The inherent right to receive a compensation commensurate with the risk involved the right to protect himself from fraud and imposition by reasonable rules and regulations, and the right to agree upon a rate proportionate to the value of the property transported." *Adams Express Co. v. Croninger*, 226 U. S. 491.

If the contracts fell within the federal statute they are void because they undertake to exempt the carrier from all liability, but this was not a contract for the transportation of a mere piece of inanimate freight. It was a contract for the transportation of a person in whose life and safety the state has an interest, and a contract which would undertake to permit his wanton destruction would be against public policy and void. It does not appear,

however, that the liability of the defendant is to be
governed by the federal statute. Congress has legislated
on interstate shipments as applied to freight, but the act
does not reach the questions herein involved, and in the
absence of action by congress the questions must be
determined by the law of Nebraska. There is no federal
legislation touching the liability of railroads growing out
of interstate transportation of persons. Such being the
case, the law of Nebraska must be held to govern. *Mondou
v. New York, N. H. & H. R. Co.*, 223 U. S. 1; *Southern
P. R. Co. v. Schuyler*, 227 U. S. 601; *Savage v. Jones*, 225
U. S. 501; *Missouri, K. & T. R. Co. v. Haber*, 169 U. S.
613.

Having found that the federal act does not apply, and
that the law of Nebraska governs, let us see what law of
Nebraska applies to the facts in this case.

"Railways heretofore constructed, or that may hereafter
be constructed, in this state are hereby declared public
highways and shall be free to all persons for the trans-
portation of their persons and property thereon, under
such regulations as may be prescribed by law. And the
legislature may from time to time pass laws establishing
reasonable maximum rates of charges for the transporta-
tion of passengers and freight on the different railroads
in this state. The liability of railroad corporations as
common carriers shall never be limited." Const., art. XI,
sec. 4.

"Every railroad corporation shall give to all persons
and associations reasonable and equal terms, facilities
and accomodations for the transportation of merchandise,
produce, commodities and other property of every kind
and description upon any railroad owned, leased or
operated within the state, and reasonable and equal terms,
service, facilities and accomodations for terminal handling
of all property and commodities whatsoever." Rev. St.
1913, sec. 5978.

The Constitution declared railroads to be public high-
ways and vested in the legislature authority to regulate

their operation.    Under the provisions of the statute quoted every railroad is bound to give transportation on equal terms, and when it undertook to transport this train it engaged in the undertaking, not as a private carrier, but as a common carrier, and would have been bound to render similar service to any other shipper that might make the demand for such transportation.    By sec. 6124, Rev. St. 1913, the legislature gave a definition of the term "common carrier:"

"The term 'common carrier,' as used herein, shall be taken to include all corporations, companies, individuals and association of individuals, their lessees or receivers, appointed by any court whatsoever, that may now or hereafter own, operate, manage or control any railroad, interurban or street railway line, operated either by steam or electricity or any other motive power, or part thereof, or any express company, car company, sleeping car company, freight and freight line company, telegraph and telephone companies and any other carrier engaged in the transmission of messages or transportation of passengers or freight for hire."

Perhaps the defendant company might have declined to accept the shipment in the form in which it was offered, but, having accepted it and undertaken its transportation, it automatically became a common carrier under the law of this state, and it cannot by private contract exempt itself from the obligations imposed under the Constitution and statutes.    *Atchison & N. R. Co. v. Washburn*, 5 Neb. 117.

A common carrier cannot limit his liability so as to cover his own or his servant's negligence.    *Farnham v. Camden & A. R. Co.*, 55 Pa. St. 53.

"A railroad company operating a line of railroad in this state is a common carrier, and cannot, under the provisions of the Constitution, limit its liability as such by special agreement with a shipper."    *Missouri P. R. Co. v. Vandeventer*, 26 Neb. 222.

"The liability of railroad corporations as common carriers shall never be limited." Const., art. XI, sec. 4.

"A railroad company, in the carriage of goods, is subject to the liability of a common carrier, and must answer for all losses not occasioned by the act of God or the public enemy, and cannot in this state by special contract limit or relieve itself from this liability." *St. Joseph & G. I. R. Co. v. Palmer,* 38 Neb. 463. See, also, *Chicago, B. & Q. R. Co. v. Curtis,* 51 Neb. 442; *Chicago, R. I. & P. R. Co. v. Collier,* 1 Neb. (Unof.) 278; *Union P. R. Co. v. Metcalf & Wood,* 50 Neb. 452, and *Omaha & R. V. R. Co. v. Crow,* 47 Neb. 84. Under the Constitution and the statutes as construed by an unbroken line of decisions of this court, the defendant must be held to be a common carrier in the transportation of the circus train.

The question as to the validity of the contract between the circus company and plaintiff is not altogether a new one in this state. In *Ault v. Nebraska Telephone Co.,* 82 Neb. 434, it is said that an employer "cannot by a direct contract to that effect escape liability for negligence is well settled; such contracts being against public policy. The state has an interest in the lives and healthy vigor of its citizens, which it will not allow the master to endanger by contracting against liability for his negligently endangering them." This case was followed and approved in *Olson v. Nebraska Telephone Co.,* 83 Neb. 735. Guided by these cases, we are led to the conclusion that if the contract under consideration were made in this state it would be utterly void. This leads us then to inquire what effect is to be given to a contract valid where made, but contrary to the public policy of this state, although intended to be performed herein. In *Chicago, B. & Q. R. Co. v. Gardiner,* 51 Neb. 70, this court had before it an Illinois contract, the same state in which this contract was made, that limited the liability of the railway company, and was valid in the state where made. The court said:

"The power by contract in this state to restrict the liability of a common carrier does not exist. The statement that such a restriction is illegal in this state is, therefore, a mere truism. To ask that the law of this state, on principles of comity, shall give way to the law of Illinois is to ask that the courts of this state shall sanction what by the Constitution has been declared illegal and against the public policy of this commonwealth."

Again our court has said: "Our courts, as an exercise of comity, will not enforce a contract resulting from the transaction of business within this state violating the public policy thereof." *Henni v. Fidelity Building & Loan Ass'n*, 61 Neb. 744.

In *Coleman v. Pennsylvania R. Co.*, 242 Pa. St. 304, the supreme court of Pennsylvania had before it a contract essentially the same as the one before us, and in disposing of the case said: "The general rule that no contract, condition, or limitation will relieve a carrier from liability to a passenger for the consequence of its own negligence, or the negligence of its servants, is not open to question, and we need not delay to cite cases in which such contracts have been held to be void as offending against public policy." See, also, *Davis v. Chesapeake & O. R. Co.*, 122 Ky. 528, 5 L. R. A. n. s. 458, and *Texas & P. R. Co. v. Fenwick*, 34 Tex. Civ. App. 222.

Whether plaintiff were a passenger within the common acceptation of that term or not, one thing is clear, he was in a place where he had a right to be. Defendant was a common carrier and was rendering the service usually rendered by a common carrier in his transportation, and the contracts pleaded will not avail to exempt it from liability for its negligence.

Finally, we are asked to set aside this judgment because the verdict is excessive. Plaintiff suffered internal injuries, his abdomen being so severely crushed as to cause him to lose consciousness. He was removed to a hospital, where he was treated by defendant's

surgeon, who after an examination deemed an immediate operation imperative, and made an abdominal incision. No rupture of any vital organ was discovered, but the crushing had been so severe that the blood vessels and the membranes had been torn and lacerated. The incision was sutured and sewed up, but plaintiff continued to suffer, and vomiting continued for a period of weeks. Whether his vomiting and suffering were due entirely to the injury received or whether the operation contributed thereto may not be definitely determined, but he was confined to his bed for some time, and during that period was able to take but little nourishment. After being released from the hospital he obtained a clerical position and attempted to do light work, but on account of nausea and vomiting was compelled to abandon his employment. The wound did not heal properly, and, at the time of the trial, he had a weakened and debilitated system. According to the testimony of eminent surgeons it would require a further operation before he would be able to perform manual labor. That his suffering was severe and protracted is not questioned. As to whether he will ultimately recover his former vigor, there is serious question. It is said in the brief of appellee, and unchallenged by appellant, that he has already been subject to two surgical operations; he has been unable to work for any but exceedingly short periods, and is threatened with the necessity for a third surgical operation. After seeing him upon the witness stand and hearing the testimony of the surgeons, the jury fixed his damages at $12,500. This award was reduced to $10,000 by the trial court. At the time of his injury he was a strong, robust man, 32 years of age, with a life expectancy of more than 33 years. During the summer season while traveling with the circus he received his board and lodging and salary of $40 a month. During the balance of the year he claims to have earned $120 a month, and it is claimed that his earnings averaged about $100 a month. When we consider the serious character of his injuries, the probability of his being permanently disabled, and the

severe suffering he has undergone, we cannot say that the judgment is excessive, and it will not be disturbed.

AFFIRMED.

SEDGWICK, J., concurring.

The plaintiff concedes, at least for the purpose of this case, that the circus train and its attaches, including the plaintiff, were being transported by the circus company and not by the defendant, and therefore that the plaintiff was not a passenger of defendant, and that the plaintiff has the burden of proof of negligence of defendant as the proximate cause of the injury. There is no dispute between the parties as to the meaning and construction of the contract. The decision of this case depends upon the question whether the plaintiff's contract to relieve the defendant from liability for its own gross negligence is valid and enforceable. Can a common carrier exempt itself from liability for its own neglegence? The act of congress does not allow contracts of that kind, and the conclusion of the majority opinion is therefore right, but I do not concur in all that is said in the lengthy and, to my mind, unnecessary quotation and discussion of the contract.