PETER E. OLSON, APPELLEE, V. NEBRASKA TELEPHONE COM-
PANY ET AL., APPELLANTS.

FILED OCTOBER 7, 1910.    No. 16,654.

1. Master and Servant: ASSUMPTION OF RISKS: DUTY OF MASTER.  A servant employed by a telephone company as a groundman, but advanced at increased wages to the work of a lineman, by accepting the promotion, assumes all risks ordinarily incident to his new duties and either known to him or obvious to a man of ordinary understanding; but, if the new work involves unusual hazards not obvious to a man of ordinary understanding or known to the servant, the master should exercise reasonable care and caution to instruct the servant and warn him of those dangers.

2. ————:  INJURY: BURDEN OF PROOF: INSTRUCTIONS.  The court should not instruct the jury that the burden is upon the master to prove his servant was injured in consequence of a danger ordinarily incident to his employment; but if, taking the instructions together, it is apparent an instruction that the burden was on the master to prove his servant was injured in consequence of a danger known and appreciated by him, or which he should have known and appreciated, did not prejudice the master, the error is without prejudice.

3. ————:  ACTION FOR INJURY: INSTRUCTIONS.  If a telephone company, whose lead of wires was built before an electric light company constructed its wires through the zone occupied by the telephone company, has an arrangement with the electric light company whereby the former can secure the removal from that zone of the electric light wires, and they constitute a menace to the lives of the employees of the telephone company, the court

41

may, in a proper case prosecuted against the telephone company by one of its employees, instruct the jury concerning the negligence of the master in failing to exercise reasonable prudence to make the place where its employees work reasonably safe, the character of the employment considered, and instruct them concerning the duty of the master to warn its inexperienced employees of the dangers incident to the location of those wires, but not known to the servant or obvious to a man of ordinary understanding.

4. ———: NEGLIGENCE: EVIDENCE: QUESTION FOR JURY. The violation of a city ordinance enacted for the purpose of protecting persons and property from injury may be such proof of negligence as will support an action brought by the injured person against the violator of the ordinance; but it is for the jury to say whether evidence of such violation establishes the defendant's negligence.

5. Appeal: INSTRUCTION: HARMLESS ERROR. In such a case, the mere fact that an instruction is ambiguous, where it is apparent the losing party was not prejudiced thereby, will not justify reversing a judgment amply sustained by the evidence.

6. ———: LAW OF CASE. "The determination of questions presented to this court in reviewing ·the proceedings of the district court becomes the law of the case and ordinarily will not be re-examined in a subsequent appellate proceeding." *Taylor v. Stull*, 86 Neb. 573.

7. Trial: VERDICT: CERTAINTY. A verdict finding for the plaintiff and against each of two defendants in the sum of $10,000, is not rendered · uncertain by the addition thereto of the words "to be assessed equally against each of the said corporations," but is a joint verdict against both of the defendants for $10,000.

8. ———: ———: CORRECTION. In such a case, an oral statement by the trial judge to the jury, at the time they returned the verdict, that they had no power to apportion damages, the return to them of the verdict, the striking therefrom by the foreman of the quoted words, and their second return of the verdict without leaving their box, presents no ground upon which the defendant can successfully predicate error.

9. Damages: EXCESSIVENESS. In the case at bar, the evidence tends to prove that the plaintiff at the time he was injured had 38 years' expectancy of life and was earning $2 a day; by reason of his injuries the bone of his left thigh was fractured midway between the knee and hip, so that a broken end was forced through the muscles and flesh of the limb; he suffered and still suffers pain, was in the hospital five weeks, and said limb after the injury was an inch shorter and noticeably smaller than before the accident; his right foot was injured so that he could

not, without suffering pain, bear his weight thereon four years after the accident; his nervous system was severely shocked; he cannot sleep well, and is incapacitated from performing ordinary labor. *Held*, A judgment of $10,000 is not so excessive as to justify this court in reversing the judgment or in compelling a remittitur therefrom.

10. Evidence: SUFFICIENCY. The evidence concerning the defendants' liability examined and discussed in the opinion, and *held* to sustain a finding against each defendant.

APPEAL from the district court for Douglas county: HOWARD KENNEDY, JUDGE. *Affirmed.*

*Greene, Breckenridge & Matters,* for appellants.

*E. T. Farnsworth, contra.*

ROOT, J.

This is an action to recover damages for personal injuries caused, as alleged, by the defendants' negligence. The plaintiff prevailed, and the defendants appeal.

This is the second appeal in this case. The opinions heretofore written are reported in 83 Neb. 735, and 85 Neb. 331. The facts established by the evidence adduced at the first trial are clearly stated in the opinion of our chief justice in 83 Neb. 735, but other evidence received during the last trial impels us to restate the facts.

Twenty-fourth street in the city of Omaha runs north and south, Grant street runs east and west, and enters Twenty-fourth from the east about 50 feet south of the point where it emerges therefrom in its course westward. Some 20 years before the plaintiff was injured the defendant telephone company erected poles and constructed a lead of wires north and south on the west side of Twenty-fourth street. The defendant Electric Light & Power Company for at least ten years prior to said date maintained a line of poles and a lead of wires along the east side of Twenty-fourth street. In 1896 and 1897 the electric light company· suspended three electric light wires

diagonally across Twenty-fourth street at the intersection of Grant street. Two of these wires carried a current of 8,000 volts each for arc lights, and the third wire conducted a current of 2,300 volts for incandescent lamps. At the time the accident occurred the ordinances of the city of Omaha provided, among other things, with respect to wires used for the purpose of conducting electricity:

"Section 1. No electric current shall be used for illumination, decoration, power or heating, except as hereinafter provided." This section was received in evidence against the electric light company only.

Rule 33, and that part of rule 28 hereinafter quoted, being parts of said ordinance, were received also in evidence against the electric light company only:

"Rule 28. Wires must be drawn taut to avoid swinging contacts and in such cases the stretches must be short."

"Rule 33. All wires designed to carry an electric light or power current must be covered with a substantial, high-grade insulation not easily worn by friction, and whenever the insulation becomes impaired, it must be renewed at once; this applies to joints which must be soldered and as well insulated as the conductors."

Sections 47 and 48 of said ordinance were received in evidence against both of the defendants and are as follows:

"Section 47. Whenever it is necessary for an electric light conductor to approach or cross the line of any fire-alarm and police-telegraph, telegraph or telephone line, the same shall not approach or cross at a distance of less than five feet either above or below said fire-alarm and police-telegraph, telegraph or telephone wire, and shall be securely fastened on supports placed as near as practical to said fire-alarm and police-telegraph, telegraph or telephone lines, or shall be carried in troughs or boxes across the route of said fire-alarm and police-telegraph, telegraph or telephone line, so constructed and placed as to prevent the electric light and police-telegraph, telegraph or telephone lines coming in contact in case either should break or become detached from fixtures.

"Section 48. That no wires used as conductors for electric lighting purposes shall be so erected or placed as to interfere by contact, induction or otherwise, with the successful operation of any fire-alarm and police-telegraph, telegraph and telephone wire, circuit or instrument."

In February, 1905, the plaintiff entered the employ of the defendant telephone company as a groundman, and worked for it in that capacity in the country until April, 1906, at which time he was transferred to Omaha, and his wages increased. He continued to work in said city as a groundman until transferred to the construction gang, with another increase of wages, June 1. The plaintiff was injured June 28, and for the preceding two weeks had been riding cable. The telephone company had erected a leaden cable about $1\frac{1}{2}$ inches in diameter, which by the use of iron hooks in the form of a figure 8 it suspended from and about six inches below a much stronger parallel wire, referred to as a "messenger." The hooks were attached to the cable before it was elevated, but were not securely closed until after both the messenger and the cable had been suspended from the poles. The telephone company provided its employees with a saddle, so constructed with an upright iron frame and overhead wheels that, when placed in position upon the messenger wire, an operator might sit therein, suspended from the messenger, and travel back and forth at will. The plaintiff was directed by his foreman to occupy a saddle suspended from said messenger and to securely close the aforesaid hooks. The plaintiff testifies, in substance, that he was afraid, and stated the fact to the foreman, with a request for a helper, but none was furnished him, and notwithstanding these facts he continued to work as directed by his foreman.

1. The evidence, to our minds, disposes of the plaintiff's contention that at the time of his injury he was temporarily engaged in work he had not been employed to perform. The evidence clearly proves that Olson had recently before his injury received a promotion, anticipated and desired by him, so that as a matter of law he assumed

the hazard of all dangers incident to the work of a lineman and known to him, or which in the exercise of reasonable care and caution he should have known; but at the time of that promotion, and for a reasonable time thereafter, he was entitled to a warning from his master concerning the hazards peculiar to his new employment not known to him or obvious to a man of ordinary understanding. *Evans Laundry Co. v. Crawford*, 67 Neb 153; *Ferren v. Old Colony R. Co.*, 143 Mass. 197; *O'Connor v. Adams*, 120 Mass. 427. The plaintiff's foreman testifies that he instructed the plaintiff to look out for electric light wires and to always assume they were alive. The plaintiff denies the foreman's statement, and testifies he was given no instruction or warning concerning electric light wires or other dangers he might encounter while riding the cable. The plaintiff was charged with knowledge of the laws of gravitation, but we do not think it can fairly be said, from the evidence before us, that he was called upon to anticipate that the electric light company maintained dangerous live wires within two feet of the telephone wires.

Upon the former appeal, in the state of the record, it was assumed by the plaintiff and by the court, and in nowise denied by either defendant, that, if the electric light wires had been insulated so as to conform to the city ordinance, there would have been no danger from a contact of the saddle frame with the insulated wire, but upon the last trial the superintendent of the electric light company testified, in substance, that such insulation would not prevent a grounded circuit under the circumstances of this case. The law will not impose upon the plaintiff the burden, if uninstructed and ignorant, of comprehending a hazard not obvious to men of ordinary understanding. If, therefore, the telephone company knew or ought to have known the position of the electric light wires with respect to its telephone wires and the messenger wire it had suspended two weeks before the plaintiff was injured, it should have exercised reasonable diligence to warn him of the consequences that would follow a contact of the

saddle with the electric light wires. In this connection it may be said that, but for the testimony of the superintendent of the electric light company, the instruction given by the court at the plaintiff's request concerning a safe place to work would have been erroneous. *Prima facie* the telephone company had no right to disturb the wires of the electric light company, and, having no control over them, the rule that the employer should exercise reasonable care to furnish a reasonably safe place for its employees to work, the nature of the employment being considered, would not apply. 1 Dresser, Employers' Liability, sec. 100. The superintendent testified, in substance, that there was an arrangement between the respective defendants whereby the one desiring to suspend a wire above or below an established wire of the other should notify the company first in possession of the zone, and joint arrangements would be made to provide for the new construction, but that no such notice was given by the telephone company of its intention to construct or suspend a new cable on Twenty-fourth street. It therefore appears that the telephone company in a limited sense had the power to control the electric light wires at the point where the plaintiff was injured, and there was some justification for giving the plaintiff's instruction numbered 3.

2. Instruction numbered 10, given by the court on its own motion, is criticised by the defendants, but is pertinent to the facts disclosed by the record. By instruction numbered 9 the jury were informed "that the plaintiff, by accepting employment with the defendant telephone company, assumed all the ordinary risks of injury caused by the dangers arising from the conditions under which his work was carried on, including the place, appliances and instrumentalities of his work, which were known or apparent and obvious to him or to persons of his experience and understanding, or which should have been obvious or apparent to persons of his experience and understanding in the use of ordinary care." The third instruction relates to the burden of proof in the various aspects of the case,

and is divided into seven subdivisions, some of which are subdivided into several paragraphs. By the fourth paragraph of the seventh subdivision thereof the jury were informed "that the burden of proof is upon the defendant Nebraska Telephone Company to establish by a preponderance of the evidence the defense of assumption of risk (unless the evidence introduced on the part of plaintiff itself shows such assumption of risk by plaintiff); that is, that the injury to plaintiff was in consequence of a danger which he knew and appreciated or ought to have known and appreciated."

Counsel for the defendant telephone company strenuously insist the burden of proof is not upon it to prove that the plaintiff's injury resulted from a risk ordinarily incident to his employment and obvious to a man of ordinary understanding, and we agree with them. *Malm v. Thelin,* 47 Neb. 686; *Missouri P. R. Co. v. Baxter,* 42 Neb. 793; *Chicago, B. & Q. R. Co. v. Curtis,* 51 Neb. 442; *Evans Laundry Co. v. Crawford,* 67 Neb. 153; *Glantz, Adm'r, v. Chicago, B. & Q. R. Co., ante,* p. 60; *Duffey v. Consolidated Block Coal Co.,* 124 N. W. (Ia.) 609; *Obenchain v. Harris & Cole Bros.,* 126 N. W. (Ia.) 960. It does not necessarily follow that the instruction, if read in connection with the ninth instruction, *supra,* could or did mislead the jury. Following the fourth paragraph of the seventh subdivision of the third instruction, if the jury found from the plaintiff's evidence that the hazard considered in the instant case was an ordinary risk incident to the employment of riding cable, the plaintiff should not recover from the telephone company. The verdict amounts to a finding that the plaintiff's evidence disclosed no such situation. If it did not appear from the plaintiff's evidence that the risk was one ordinarily incident to the employment, that fact could only have been proved by the defendant's evidence. The verdict still being in favor of the plaintiff, the jury must have found that all of the evidence upon this subject did not convince them that the risk was an ordinary incident of riding the cable.

It should be remembered the testimony of the plaintiff and his foreman are in sharp conflict upon one subject, and that is as to whether the foreman warned the plaintiff to look out for electric light wires and to assume they were "hot." If the foreman's testimony is accepted, the plaintiff was to some extent warned of the hazard responsible for his injury, and with that warning he assumed the risk incident thereto. It is probable the court had this testimony in mind when it gave the last paragraph of subdivision 7 of instruction numbered 3. We are of opinion the lower court might have instructed with greater precision upon the subject of the burden of proving an assumption of risk; but, considering all of the evidence and all of the instructions upon this subject, we are of opinion there was no error in instruction numbered 3 prejudicial to the defendant telephone company. Code, sec. 145.

3. The fourth instruction given by the court is as follows: "You are instructed that negligence is the failure to do what reasonable and prudent persons would ordinarily have done under the circumstances of the situation, or doing what reasonable and prudent persons, under the existing circumstances, would not hav done. And in this connection you are further instructed that evidence of the violation of a city ordinance is to be taken by you as evidence tending to show negligence on the part of the person or corporation shown to have violated such ordinance; and it is to be considered in connection with all the other evidence in the case in determining that question." Counsel for the defendants say the ordinance relates solely to the duty of the electric light company, and was not violated by the telephone company. If we admit the premises, the conclusion of prejudice does not necessarily follow. The proof is satisfactory that the electric light company did violate the ordinance, and, if the telephone company did not, the instruction could not prejudice it. We do not forget the court received sections 47 and 48 of the city ordinance as evidence against both defendants; but this-

evidence was proper for the purpose of proving the duty imposed by the municipal law upon the electric light company, and that the telephone company, by suspending its new cable within five feet of the electric wires, aggravated a situation created by the unlawful acts of the electric light company. The ordinance has some probative force against the telephone company upon the issue of whether it should have warned the plaintiff of the hazard created by the location of the wires. The telephone company ought not to be permitted to say that, because the electric light company was first negligent, the telephone company was not guilty of any negligence. *McKay & Roche v. Southern Bell Telephone Co.*, 111 Ala. 337, 31 L. R. A. 589.

We do not approve so much of the instruction as reads: "The violation of a city ordinance *is to* be taken by you as evidence tending to show negligence on the part of the person or corporation shown to have violated such ordinance." Had the court substituted the word "may" for the words "is to," the instruction would fairly respond to the rule of law announced in *Omaha Street R. Co. v. Duvall*, 40 Neb. 29. We do not think, all of the evidence being considered, this slight deviation from a proper statement of the rule of law worked to the defendants' prejudice.

Counsel for the defendants direct our attention to the criticism in our first opinion of the instructions given by the court with respect to contributory negligence, and respectfully ask us to as zealously safeguard the rights of the defendants upon this appeal as we did those of the plaintiff upon the first appeal. The cause was reversed on the first appeal for error in directing a verdict for the telephone company and in receiving irrelevant and prejudicial evidence over the plaintiff's objections. For the benefit of the trial court we referred to some imperfections appearing in the charge to the jury, so that upon a second trial like errors might not be committed, but we did not say that, if there had been no other errors, the giving of those instructions would have justified a reversal of the case.

4. Instruction numbered 5, requested by the plaintiff and given by the court, responds to the law of the case announced in our former opinions in this case. The principle stated is also supported by authority. *Schwanenfeldt v. Chicago, B. & Q. R. Co.*, 80 Neb. 790; *Bott v. Pratt*, 33 Minn. 323. The former opinions of this court, so far as the litigants are concerned, control the trial court and should be followed upon subsequent appeals. *Taylor v. Stull*, 86 Neb. 573.

5. The jury returned a verdict as follows: "We, the jury, duly impaneled and sworn in the above entitled cause, to well and truly try the issues joined between the said parties, do find for the said plaintiff and against the Nebraska Telephone Company, a corporation, and Omaha Electric Light and Power Company, a corporation, and do assess his damages at the sum of ten thousand dollars ($10,000) to be assessed equally against each of the said corporations." The court thereupon orally instructed the jurors they could not apportion damages, and returned the verdict to their foreman. The jurors consulted without retiring, and the foreman, after drawing a line through the last clause in the verdict, delivered it to them. It was examined by all the jurors and returned as their verdict. At the request of the defendant's counsel the jury were polled, and each juror answered in the affirmative to the following interrogatory propounded by the clerk: "Was and is this still your verdict?" The defendants insist the trial judge should not have given an oral instruction to the jury, but, if not satisfied with the verdict, should have returned it with written instructions, and the jurors should have retired to consider the case in the privacy of the jury room.

The court's written instructions permitted the jury to return a verdict in favor of the plaintiff against either or both of the defendants, or in favor of both of the defendants and against the plaintiff. In the verdict first returned the finding is for the plaintiff against both defendants and the damages are assessed at $10,000. There is

nothing on the face of the verdict to suggest that the jury sought to apportion damages, but each defendant is held for the entire recovery. Striking out the last clause of the verdict did not change the liability of either defendant. *State v. Beall*, 48 Neb. 817.

6. The defendants urge that the damages are excessive, the result of passion and prejudice, and that the evidence does not sustain the recovery. Upon this point the proof establishes that the plaintiff, as a result of the electric shock, was thrown from the saddle, 30 feet, to the paved street; he suffered a compound fracture of the bone in his left thigh, and the broken bone, after being forced through muscles and flesh, protruded from the limb, and he was confined to the hospital five weeks. The plaintiff's left leg, as a result of those injuries, is smaller and shorter than its mate; the ligaments in the instep of his right foot were bruised and strained, so that four years after the injury he suffered pain when compelled to bear his weight upon that foot. The shock has seriously affected the plaintiff's nervous system and interferes with his ability to sleep. The testimony is undisputed that those injuries are permanent and the plaintiff cannot perform an ordinary day's labor. Olson has suffered, and for an indefinite period, in all probability, will suffer, severe pain. At the time of the accident the plaintiff's expectancy of life was over 38 years, and he was earning $2 a day. Because of his condition, induced by his injuries, the plaintiff's earning capacity has been almost destroyed. This court cannot compute the compensation that should be awarded for pain suffered, or reasonably certain to be suffered, by the plaintiff, nor can we measure the amount of money he should receive for the humiliation he will endure by reason of his crippled condition, or for a possible decrease in his natural life. While the recovery is considerable, we do not think it is so excessive, all of the elements of damage being considered, that we should either reverse the judgment or compel a remittitur.

7. Counsel insist the evidence will not sustain a verdict

against either defendant. We shall not attempt to restate the evidence. It may be said, however, that the electric light company for ten years prior to the accident had maintained its wires at the intersection of Twenty-fourth and Grant streets in violation of the terms of the city ordinance, and the defendants should be charged with knowledge of that fact. The evidence discloses that the telephone company for some time prior to the accident maintained a cable upon its poles along Twenty-fourth street at the point where the plaintiff was injured, so that the electric light company should be charged with notice of the fact that an employee of the telephone company might ride that cable for the purpose of making repairs without regard to new construction, and it will not be heard to say it should not be held in reason to have anticipated the appearance of the plaintiff at said point. The telephone company, in addition to the notice given to it by the long continued location of said electric light wires, knew through its foreman, in control of the construction and suspension of the new cables, of the dangerous conditions referred to. With that knowledge it directed the plaintiff, a man of slight experience, to ride an iron-framed saddle suspended from the aerial cable, without warning him of the presence of the electric light wires or of the terrible shock he would receive the instant that saddle should so much as touch one of those wires, whether they were insulated or uninsulated.

In our opinion there is sufficient evidence to sustain a finding that each defendant was guilty of negligence and that the plaintiff should recover therefor. The issue of the plaintiff's contributory negligence was properly submitted to the jury, and their verdict finding against this defense is sustained by the evidence. There are some arguments in the defendants' briefs not specifically referred to in this opinion. They have all been considered, but in our judgment they do not raise issues so important as to justify extending this opinion by disposing of them in detail and we shall not make further reference thereto.

Upon the entire record, we find no error prejudicial to either defendant, and the judgment of the district court is

AFFIRMED.

. SEDGWICK, J., dissenting.

In the second paragraph of the syllabus the law is stated to be that "the court should not instruct the jury that the burden is upon the master to prove his servant was injured in consequence of a danger ordinarily incident to his employment." This, I think, is not the law. It is directly contrary to a large proportion, if not all, of the respectable authorities. See *Duffey v. Consolidated Block Coal Co.*, 124 N. W. (Ia.) 609, and the authorities suggested in the editorial note. By this paragraph of the syllabus and the criticisms in the opinion of the instruction quoted, this court becomes, for the first time, committed to the proposition that it is error to instruct the jury in such cases "that the burden of proof is upon the defendant Nebraska Telephone Company to establish by a preponderance of the evidence the defense of assumption of risk (unless the evidence introduced on the part of plaintiff itself shows such assumption of risk by plaintiff) ; that is, that the injury to plaintiff was in consequence of a danger which he knew and appreciated or ought to have known and appreciated."

If the plaintiff himself shows in his pleadings or proof that he was guilty of contributory negligence, or that he assumed the risk of the danger complained of, he, by so doing, fails to make a case; but, unless the plaintiff discloses those facts by his own pleadings and evidence, it devolves upon the defendant to allege and prove contributory negligence or the assumption of risk. The rule, I suppose, is the same in regard to both. The opinion cites *Malm v. Thelin*, 47 Neb. 686, and *Glantz, Adm'r, v. Chicago, B. & Q. R. Co., ante,* p. 60, and other cases. In the last named case, in a dissenting opinion, I tried to point out that *Malm v. Thelin* and similar cases are not in point and are not authority for holding that the burden of proof

is upon the plaintiff to show that he did not assume the risk. If the risk which he alleges in his petition is such that the courts will take judicial notice that it is ordinarily incident to such employment as he alleges he was engaged in, or if plaintiff's evidence on the trial shows that the risk complained of is ordinarily incident to his employment, he fails to make a case, unless he can show an exception such as is indicated in *Malm v. Thelin, supra.* The same is also true in regard to contributory negligence, and the rule is invariably applied that the burden of proof is upon the defendant who relies upon it to establish contributory negligence or assumption of risk. The conclusion reached in the opinion is undoubtedly right, and is not dependent upon this erroneous statement of the law. The rule now adopted is the more important because, if adhered to, it must logically be extended to contributory negligence or other defenses, and so introduce confusion into the rules of pleading which have been long supposed to be settled.

FAWCETT, J., concurs in the foregoing dissent.

LETTON, J.

I think the recovery is excessive under the proof, and that a remittitur of $2,500 should be required as a condition of affirmance.