[No. 15561. Department Two. April 8, 1920.]

# ALEX PEARSON, *Respondent*, v. ARLINGTON DOCK COMPANY et al., *Appellants*.[1]

PLEADING (104)—AMENDMENT TO CONFORM TO PROOF. In an action for personal injuries sustained by a stevedore through the alleged negligence of a stevedore company in directing the operation of an lectric winch, it is proper to allow the complaint to be amended to conform to proof of negligence in continuing operations after knowledge of the incompetence of the employee operating the winch, brought out on cross-examination of plaintiff's witnesses; where no prejudice or surprise was shown.

MASTER AND SERVANT (66, 149)—EMPLOYMENT OF INCOMPETENT SERVANT—NEGLIGENCE—EVIDENCE—SUFFICIENCY. A stevedore company, bound to furnish a stevedore a safe place to work in the hold of a vessel, is sufficiently shown to be negligent by evidence that it continued operations after knowledge of the incompetence of the winchmen furnished by another company to operate a winch, employed to lower heavy iron pipes into the working place.

TRIAL (126) — VERDICT — FORM — SEGREGATION OF DAMAGES—SURPLUSAGE. In an action against joint tort feasors, a verdict against both defendants in the sum of $3,750 "each," must be taken as a verdict for the sum of $7,500; and the jury having no right to segregate the damages, that portion of the verdict must be taken as surplusage.

APPEAL (467)—HARMLESS ERROR—VERDICTS. Irregularity in a verdict against two joint tort feasors for $7,500 in attempting to segregate the damages and assess half against each, is cured by plaintiff's remission and reduction of the verdict to the sum of $3,000.

MASTER AND SERVANT (21)—RELATION OF PARTIES—INJURY TO THIRD PERSON—LOAN OF SERVANT. Where a Stevedore company was to furnish only the labor in loading, and the ship company had agreed to furnish the equipment and machinery, and thereupon hired an electric winch of a dock company, together with the dock company's servant to operate the winch, the operator was not loaned to the stevedore company, but to the ship company and the latter was the master of such servant and liable for his negligence, under the "loaned servant" doctrine.

[1] Reported in 189 Pac. 559.

SAME (21)—RELATION OF PARTIES—LOANING INCOMPETENT SERVANT. The fact that a dock company, renting its electric winch to a ship company, loaned its servant to the ship company to operate the winch does not relieve it from liability for injuries to an employee of a stevedore company, occasioned by the incompetence of the operator; where he was negligently retained by the dock company after knowledge of his incompetence and request made by the stevedore company to discharge him and furnish a competent operator, since the doctrine of loaned servant relieves the first master from liability for the servant's negligence only, and not from its own negligence in furnishing an incompetent servant.

Cross-appeals from a judgment of the superior court for King county, Ronald, J., entered February 28, 1919, upon the verdict of a jury rendered in favor of the plaintiff, as against one defendant, and granting a motion for judgment *non obstante* as to the other defendant, in an action for personal injuries sustained by a stevedore in loading a vessel. Reversed on plaintiff's appeal.

*Roberts & Skeel* and *J. J. Geary,* for appellant North Coast Stevedoring Company.

*James R. Gates* and *Henry W. Pennock,* for respondent and cross-appellant.

*J. Speed Smith, Henry Elliott, Jr.,* and *Bogle, Merritt & Bogle,* for respondent Arlington Dock Company.

BRIDGES, J.—The plaintiff was injured while acting in the capacity of a stevedore in loading the steamship "Sono Maru," which vessel was owned by the Trans-Oceanic Company and lay alongside of the Arlington dock, at Seattle. The complaint charged the defendant Arlington Dock Company with negligence in employing an incompetent man to operate the electric winch located on its wharf. The negligence charged against the defendant North Coast Stevedoring Company was that its hatch tender negligently directed the operation of the electric winch. There was a ver-

dict in favor of the plaintiff and against both defendants. Each defendant moved for judgment notwithstanding the verdict. The motion of the dock company was sustained; the motion of the stevedoring company was denied, as was also its motion for new trial. The court required the plaintiff to agree to accept $3,000 in lieu of the larger amount found by the verdict, otherwise a new trial would be granted the stevedoring company. The plaintiff consented to the reduction, and judgment in the sum of $3,000 was entered against the stevedoring company. That company has appealed. The plaintiff has appealed from that portion of the judgment dismissing the dock company out of the case.

The facts are substantially as follows: The stevedore company made a contract with the steamship company to load the "Sono Maru" from the wharf of the Arlington Dock Company. The plaintiff was one of its employees and, at the time of his injury, was at work in the hold of the vessel. It employed a hatch tender, who had charge of the loading operations and gave signals to the winchman. It furnished nothing but labor; it had no loading equipment. That equipment was to be furnished by the ship company. Located on the second floor of the wharf was an electric winch owned by the dock company. The ship's winch would not reach and lift the cargo. The use of the dock winch was needed in the loading operations. The ship company made arrangements with the dock company for the use of this electric winch to assist in loading the vessel. It agreed to pay that company fifty cents per hour for the use of the winch; the dock company was to furnish a man to operate the winch, and the ship company was to pay whatever amount the dock company paid by way of wages to the winchman. The cargo being loaded consisted of long, heavy

iron pipes. These were on freight cars which had been brought to the wharf. In loading, the lines of the dock winch would be attached to a bundle of pipes which would be lifted high up in the air by means of its power. But this winch was unable to swing the load over the boat. For this purpose the lines of the boat winch were also attached to the load. When the load was over and above the hatch, it was the duty of the winchman to slowly lower it. At the time of plaintiff's injury, the dock winchman suddenly, and without any signal, permitted the load to drop from a considerable height. The result was that the chains which enclosed the bundle of piping came loose and some of the pipes were thrown through the hatch into the hold, striking the plaintiff and injuring him. Goldspring was the name of the dock winchman. The testimony tended to show that he was incompetent and that it was his incompetency which caused plaintiff's injury; that, long before plaintiff's injury, which was the second or third day of the loading, both defendants knew of such incompetency; that the stevedore company had made complaint to the dock company and requested the discharge of Goldspring, but the dock company took no action till after plaintiff's injury, when it discharged him. Plaintiff had no knowledge of Goldspring's incompetency, nor means of acquiring such knowledge. There was no testimony tending to establish the negligence charged in the complaint against the stevedoring company. However, at the close of plaintiff's case, he asked permission to amend his complaint to conform to the proof, so that it would allege as follows:

"That the North Coast Stevedoring Company was negligent in this: That the North Coast Stevedoring Company, after its knowledge of the incompetency of Goldspring, failed and neglected to cease work and sus-

pend operations, and as a result thereof plaintiff was injured."

The court permitted the amendment over the objection of the stevedore company.

We will first consider the appeal of the stevedore company. It contends that the trial court committed error in permitting the plaintiff to amend his complaint during the progress of the trial. The testimony tended to prove that the dock winchman was incompetent and that the stevedore company had knowledge of such incompetency and the consequent dangers thereof, but permitted the plaintiff to work in the hold of the vessel without informing him of the danger. Much of this testimony was brought out by the cross-examination of plaintiff's witnesses by the attorney for the stevedore company. This court has, time and again, held that a complaint may be amended to conform to the testimony. *Yeisley v. Smith,* 82 Wash. 693, 144 Pac. 918; *Carlisle Packing Co. v. Deming,* 62 Wash. 455, 114 Pac. 172; *Sjong v. Occidental Fish Co.,* 78 Wash. 4, 138 Pac. 313. It does not appear to us that the stevedore company was prejudiced or surprised by the amendment, and we think the court was justified in its ruling. But it is contended that the amendment should not have been allowed because in no event would the stevedore company be liable to the plaintiff for the incompetency of the servant of the dock company. This cannot be the law. Plaintiff was at work in the hold of the vessel and had no means of knowing, and did not know, of Goldspring's incompetency. If the stevedore company knew of it, it was bound either to suspend work or notify plaintiff of the danger. It owed the duty to him of furnishing him a reasonably safe place in which to work. The fact, if it be a fact, that the incompetent workman was the servant of the

dock company or someone else, could not relieve the stevedore company of this duty.

In the case of *Consolidated Ice Machine Co. v. Keifer*, 134 Ill. 481, 25 N. E. 799, 23 Am. St. 688, 10 L. R. A. 696, the facts were that the ice company undertook to place a structure on foundations furnished by the landowner, which foundation was in a dangerous condition and that condition was known to the ice company for whom the decedent Keifer was working. Under these circumstances the plaintiff was injured, and the court said:

" 'The ice machine company was negligent in directing deceased to work in this place of danger, it having knowledge, and he being without notice or knowledge, of such danger, and the successive concurrent negligence of appellants thus united in causing the death of, Keifer.' . . . And the ice machine company with knowledge of its insufficiency, went on and placed the tank thereon, and thereby became responsible for injuries to any of its servants it might send to work upon the tank, without giving them notice of the danger to which they were exposed. Here the negligence of each of three defendants directly concurred in producing the death of Keifer."

Nor have we any doubt that there was ample proof showing negligence on the part of the stevedore company to take the case to the jury. Its head man on the work knew that the dock winchman was incompetent, and not only complained thereof to the winchman himself, but also to the foreman of the dock company, and asked that he be removed and a competent man put in his place.

The stevedore company further complains of a number of instructions given by the court to the jury. A detailed discussion of them would serve no good purpose. We have carefully examined all of them and can find no serious fault with them.

It is further contended that the verdict is irregular and void. It was as follows: "We, the jury in the above entitled cause, do find for the plaintiff and against both defendants in the sum of $3,750 each Arlington Dock Co., North Coast Stevedoring Co., Dollars ($7,500)." While the verdict is somewhat awkward, it is perfectly plain that the jury meant to find a verdict of $7,500 for the plaintiff against both defendants, each defendant to pay one-half of that amount. The jury did not have any right to segregate this amount and make each defendant liable for a portion thereof, consequently that portion of the verdict where the jury undertakes to do so must be considered surplusage. *San Marcos Electric Light & Power Co. v. Compton,* 48 Tex. Civ. App. 586, 107 S. W. 1151; *San Antonio & A. P. R. Co. v. Bowles,* 88 Tex. 634, 32 S. W. 880; *Olson v. Nebraska Telephone Co.,* 87 Neb. 593, 127 N. W. 916.

The trial court required the plaintiff to consent to a reduction of the amount of this verdict to $3,000. This action of the trial court would be sufficient in itself to cure any irregularity in the verdict.

It is argued that the verdict, even as reduced, is excessive. We have carefully read the testimony and are satisfied that the verdict, as reduced, is not excessive.

The conclusion to which we have come makes it necessary to affirm the judgment as to the stevedore company.

We have hereinbefore stated that the trial court granted the motion of the dock company for judgment notwithstanding the verdict. The plaintiff has appealed from this action of the court and it remains for us now to consider this view of the case. It appears from the record that the reason given by the trial court for its judgment in favor of the dock company

was that its alleged incompetent dock winchman had been loaned to the stevedore company or the ship company to be used in the loading of the vessel, and was not the servant of the dock company at the time of the injury. Both the plaintiff and the stevedore company take the position that the winchman was the servant of the dock company, while the latter argues that it had hired its winchman to either the stevedore company or the ship company; that, in any event, he was not its servant at the time of plaintiff's injury.

In order to determine this controversy, it will be useful to again look at the testimony. Therefrom it appears that in loading a vessel the stevedore company furnishes only labor and does not furnish any appliances whatsoever. In this instance, the stevedore company agreed with the owner of the ship to furnish the labor for the purpose of loading the vessel; the ship company was to furnish all necessary machinery and appliances for that purpose. The cargo to be loaded was not within reach of the vessel's winch and lines and it was necessary to use the winch owned by the dock company. The ship company, therefore, made a contract with the dock company whereby its electric winch was to be used in the loading. The arrangement between the owner of the ship and the dock company was that the latter would receive from the former fifty cents per hour for the use of the winch, and in addition thereto, the ship company was to pay the dock company the amount which it was required to pay to the operator of the winch. Later, the dock company made out to the ship company its bill in accordance with the contract, and that bill was paid by the ship company. During the first half-hour of the loading operations, the stevedore company had one of its men operate the dock winch, but at the end of that time the dock company refused to allow the stevedore com-

pany man to continue; sent him away, and put Goldspring, its servant, on the job. Later, the stevedore company complained to Goldspring about the incompetent manner in which he was handling the winch, and he gave them to understand that he would accept no orders from them. On one or two occasions thereafter, the stevedore company's foreman complained to the foreman of the dock company about the incompetency of Goldspring, requesting that he be discharged and someone else put in his place. The dock company agreed to look into the matter, but did nothing until after the plaintiff was injured, when the dock company discharged Goldspring.

The respective parties have elaborately argued the question of "loaned servant." This leads us into a branch of the law where the dividing lines are often exceedingly dim. The general rule of the loaned servant doctrine is certain and easy; the difficulty arises in applying the facts of a given case to the rule. The rule is nowhere better stated than by Mr. Justice Moody in the case of *Standard Oil Co. v. Anderson,* 212 U. S. 215, where he says:

"To determine whether a given case falls within the one class or the other we must inquire whose is the work being performed, a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work."

The loaned servant doctrine is based upon, and grows out of, the negligent act of the servant. In a proper case, the master is, of course, liable for the negligence of his servant. But it is sometimes the case that, in a sense, a servant may have two masters. Then arises the question, which master is liable? The first and general master may hire his servant out to a second and special master to perform only and exclusively

the work of the latter. In that case, the general rule that the master is liable for the negligence of the servant will not apply to the first master because the servant is not engaged in his work. Let us see, first, whether there was a loan by the dock company to the stevedore company. The only thing the latter had to do with the loading was to furnish the labor; no duty devolved upon it to furnish either machinery or equipment. The ship company was to provide all of that. It made arrangements with the dock company for the use of its winch and a man to operate it. They were hired to do a certain portion of the loading of the vessel, and for that service the dock company was to be paid by the steamship company. The dock company employed Goldspring to operate the machine; it received complaints about his competency and finally discharged him. He looked to it for his pay and was paid by it. The fact that the dock winchman worked in harmony and concert with the stevedore men, or that the hatch tender of the latter gave signals to the winchman, is nothing to indicate whose servant the winchman was. Such things were only conveniences in loading. The same thing would have happened if the winchman had been concededly the servant of the dock company. There is an entire lack of all the essentials which must exist to form the relationship of master and servant between the winchman and the stevedore company. Manifestly, therefore, the winch and winchman were not loaned to the stevedore company.

But did the dock company loan its winch and servant to the ship company? Was it a part of the work or duty of the dock company to load this ship? We think not. It was not interested in that work. Neither the ship nor the cargo belonged to it. It was the owner and operator of a wharf, and of that only. It did not

solicit from the ship company nor the stevedore company the work of loading the vessel, nor did it make application to any person to have its winch and winchman used in that work. The ship company had agreed with the stevedore company, not to hire someone to assist the latter in the loading, but to furnish the necessary equipment. It paid the dock company a small rental per hour for the use of the winch and it paid the man who operated it. It is true that, in the first place, the dock company paid the operator, but the agreement provided that it should be repaid that identical sum by the ship company. The dock company was to be paid fifty cents per hour for the use of the winch, and not fifty cents an hour for services to be rendered in the loading of the vessel. It did not do the loading; it simply hired its machine and operator to the ship company to be used for that purpose. It is true the dock company hired, and probably had the right to discharge, the operator, but that fact alone is not inconsistent with the idea of the loan of a servant. It employed the operator in order that it might hire him and the machine together as one implement, as it were, to the ship company.

We think these facts make it clearly appear that the dock company loaned its winch and servant to the ship company and that the latter was the master of the servant who operated the winch. This conclusion is not inconsistent, but rather in harmony, with the decision in the case of *Standard Oil Co. v. Anderson, supra*. There the facts were that the Standard Oil Company owned the wharf and the cargo. It employed one Torrence, a master stevedore, to load the ship. The plaintiff, Anderson, was a stevedore employed by Torrence to assist in the loading. The winch or hoisting apparatus used in the loading belonged to the oil company and was a part of its wharf. The plaintiff

was injured through the negligence of the winchman. The court held that the winchman was the servant of the oil company and that the latter was liable to the plaintiff. The material differences between the facts of that case and this one are as follows: in that case the defendant was the owner of the cargo; such was not the fact here; there the defendant was directly interested in the loading, but not so here; there the winchman was hired and paid by the defendant; here he was hired but not paid by the defendant; there the steamship company agreed to pay the defendant $1.50 per ton for doing the hoisting; here the defendant was to be paid 50 cents per hour for the use of its winch. These are important differences and, we think, clearly distinguish that case from this. We have read all or nearly all of the cases cited in the briefs, as well as others, but cannot take the space or time to discuss them here. Certainly none of them is directly in point and none of them sheds any more light than, or adds any argument not contained in, the *Standard Oil Co.* case, *supra*. The following are some of the more important cases generally supporting the conclusion to which we have come: *Olsen v. Veness,* 105 Wash. 599, 178 Pac. 822; *Higgins v. Western Union Tel. Co.,* 156 N. Y. 75, 50 N. E. 500, 66 Am. St. 537; *Quinn v. National Sugar Refining Co.,* 102 App. Div. 47, 92 N. Y. Supp. 95; *Hartell v. T. H. Simonson & Son Co.,* 218 N. Y. 345, 113 N. E. 255; *Philadelphia & Reading R. Coal & Iron Co. v. Barrie,* 179 Fed. 50.

We are impelled to hold that the dock company's winch and its operator were hired or loaned to the ship company, and that the winchman was, at the time of the injury of plaintiff, the servant of the latter. But it does not follow that the dock company is not liable to the plaintiff. By hiring its winch and servant to the ship company, it impliedly agreed to furnish a

winch which was reasonably effective to do the work of loading the vessel, and an operator thereof who was reasonably competent. In other words, its contract obligated it to furnish a reasonably competent winchman. It knew the use to which it was intended to put the winch; it knew the stevedore company was loading the ship, and for that purpose it would employ and have on the ship various servants; it knew the dangers which would exist if it furnished a defective winch or an incompetent winchman. While it could not be held for any negligence of the winchman, because the latter was not its servant, yet it would be liable for its own negligence in furnishing an incompetent winchman. It is not necessary that there be any contractural relationship between the plaintiff and the dock company to make the latter liable to the former for its negligence. It owed the duty to furnish a competent winchman, not only to the ship company, but to the plaintiff and to all persons who might lawfully be within reach of the dangers created by an incompetent winchman. While the dock company may have used, and supposedly did use, reasonable care in selecting the winchman, yet there was ample testimony that, after he had been at work for a few hours, it learned of his incompetency. It received that information long before the plaintiff was injured. Under the court's instructions, this case was submitted to the jury only on the question of the competency of the winchman. The jury was told that there could not be any recovery for any negligent act of the winchman. The jury found against the dock company, and, in so doing, it must have found that the winchman was incompetent and that the dock company knew of such incompetency. The doctrine of loaned servant is not decisive here, and can be applicable in any case only when recovery is based upon the negligence of the servant. The dock

company is liable, not because of Goldspring's negligence, but because of its own negligence in employing and retaining an incompetent man to operate its winch. This case is controlled by that doctrine which we find in 18 R. C. L. 542, as follows:

"A person undertaking to furnish machinery or appliances for the use of the servants of another assumes a duty to furnish proper and safe appliances; and a negligent performance of such a duty, resulting in injuries to one engaged in doing the work or lawfully using the appliances, imposes a liability on the person so furnishing the same for injuries sustained in consequence of such negligence. The obligation does not depend on a contractual relation between the person injured and the person whose negligence causes the injury, but on a failure to perform a duty assumed by one which results in injury to another."

The case of *Johnson v. Spear*, 76 Mich. 139, 42 N. W. 1092, 15 Am. St. 298, is very similar to the one here. There the defendant owned a coal dock, and vessels laden with coal were in the habit of unloading there. One Watkins had the contract for unloading the vessel in question. He was to get twenty-one cents per ton, and the defendant, the dock owner, was to furnish the dock engine, wheelbarrow, planks, etc. Watkins was to furnish the man to do the work. The plaintiff, who was in the employ of Watkins, was injured because of the breakage of a part of the hoisting apparatus. The court said:

"If the injuries result from the negligence of the defendant while work is being done upon his premises, and through his fault in not keeping them in a suitable and safe condition, he is liable to any servants of the contractor for injuries resulting to them from defects therein; not because there is any contract obligation between the parties, but arising out of his obligation or duty to provide safe appliances for the servants of the contractor to use, and to keep his premises upon

which such servants are at work in a reasonably safe condition, whether the contract provides for it or not. . . . The contractor, in this case, was employed to do a particular job . . . The defendant furnished the outfit, which included a stationary engine upon his premises, and the appliances connected therewith, in hoisting the coal from the vessels to his dock. The circumstances left the proprietor charged with the duty which regularly attached to him to see that the machinery and appliances so furnished did not endanger the safety of others.''

If the dock company had furnished a winch which was defective and dangerous, then, under all the authorities, it would be held liable to any person who was injured because of such defects. There cannot be any legal distinction between the duty of the dock company in hiring out a defective winch and its duty in hiring out an incompetent operator thereof. Each is defective; each is incompetent. *D'Almeida v. Boston & Maine R.*, 209 Mass. 81, 95 N. E. 398, Ann. Cas. 1913C 751, and particularly the note to that case which cites many authorities; *Kiser v. Suppe*, 133 Mo. App. 19, 112 S. W. 1005; *Sullivan v. New Bedford Gas & Edison Light Co.*, 190 Mass. 288, 76 N. E. 1048; *Cleveland C. C. & St. L. R. Co. v. Berry*, 152 Ind. 607, 53 N. E. 415, 46 L. R. A. 33, and elaborate note to that case; *Niemeyer v. Weyerhaueser*, 95 Iowa 497, 64 N. W. 416.

We think the trial court was right in submitting the whole case to the jury, and was in error when it entered judgment for the dock company notwithstanding the verdict. The judgment is affirmed as to the stevedore company and reversed as to the dock company, with instructions to enter judgment on the verdict against both defendants in the sum of $3,000.

HOLCOMB, C. J., FULLERTON, TOLMAN, and MOUNT, JJ., concur.