[No. 28620. *En Banc.* July 27, 1942.]

R. B. ROWE *et al., Respondents,* v. SAFEWAY STORES, INC., *et al., Appellants.*[1]

[1] Reported in 128 P. (2d) 293.

364

*Thos. L. O'Leary* and *Ernest L. Meyer,* for appellants.

*Smith Troy, Doane Brodie,* and *J. W. Graham,* for respondents.

DRIVER, J.—This is an action to recover damages for personal injuries sustained by plaintiff wife in a motor vehicle collision. The jury returned a verdict for the defendants. The trial court granted plaintiffs' motion for a new trial on the ground that certain instructions requested by them had been erroneously refused. Defendants have appealed.

Appellants maintain that the court erred in granting the motion for a new trial for the following reasons, broadly stated: (1) The appellants' motion for a

directed verdict at the trial should have been granted, the verdict in their favor being the only one which the jury rightly could have rendered; (2) the respondents' proposed instructions did not correctly state the applicable law and were properly rejected; and (3) the failure to give the instructions was not prejudicial to the respondents.

Briefly, the pertinent facts, as the jury could have found them, are these: About 9:40 on the morning of January 30, 1940, respondents drove to Olympia in their 1929 Ford sedan from their home three miles to the eastward. Mr. Rowe, who was then seventy-five years old, was driving. On the way, they encountered fog, which progressively became worse until, as they neared the city limits, the visibility was only about forty feet. Mr. Rowe was then driving at fifteen miles an hour (he had not exceeded twenty-five miles at any stage of the journey). The fog continued to get thicker, and he eased up on the throttle, slowing down to what he estimated to be about fourteen miles an hour. Proceeding at that rate of speed, he drove his car into the rear of appellants' truck and trailer, parked on the side of the street to his right. The collision occurred within the city limits of Olympia. At that time, according to Mr. Rowe's testimony, the fog was so dense that he could scarcely see ten feet. There was considerable traffic on the highway, running in both directions.

At the scene of the accident, the paved portion of the street is forty feet wide, with a yellow marker line in the center. On the north side, where appellants' truck was parked, there is a sidewalk, the inner edge of which is separated from the pavement by a strip of gravel two and a half feet wide. The truck, owned by appellant corporation and operated by appellant L. O. Heyer, was a diesel tractor with a nineteen-foot trailer behind it,

the over-all length being about thirty feet. The trailer was about eight feet wide and had dual wheels. It had been proceeding westward with a load of groceries, and the driver had stopped, he said, because he thought that the fog was too thick for him to pass through the center of Olympia with safety. He had pulled over to the north side of the highway, with only the outside wheel of the right rear dual wheels of the trailer on the gravel and the body extending over onto the pavement about eight feet. The truck had been standing only a minute or so when the collision occurred. The center of the front bumper of respondents' automobile struck the left rear dual wheels of the trailer. Appellants' vehicle was a sort of cream color and difficult to see in the fog. The fog was of variable density. As one of respondents' witnesses described it: "Well, it was rolling very much in waves. At times it was thick and you couldn't see. Other times it would clear and you could get a fleeting glimpse of traffic."

There was a direct conflict in the testimony as to whether or not the red tail light and the other lights on the truck were burning immediately prior to the accident. Respondent husband testified that the lights were not on. He was corroborated in this by another witness, who stated also that he saw appellant truck driver turn on the lights shortly after the accident. Appellant truck driver testified that the lights were on before and at the time of the collision.

 Were the respondents, as appellants contend, guilty of contributory negligence as a matter of law? As stated, the jury would have been warranted in concluding that the density of the fog was variable and deceptive; that respondent driver had reduced his speed to fourteen miles an hour; that there was a considerable volume of traffic moving in both directions; and that the appellants' vehicle was standing partly

blocking respondents' lane of travel, the trailer being of neutral color and low visibility in the fog and without lights. Considering all these attendant circumstances, we think the question whether respondent driver's conduct measured up to the standard of what a reasonably prudent person would have done under like or similar circumstances, was one of fact for the jury to resolve under proper instructions by the court. *Morehouse v. Everett*, 141 Wash. 399, 252 Pac. 157, 58 A. L. R. 1482; *Griffith v. Thompson*, 148 Wash. 243, 268 Pac. 607; *Grubbs v. Grayson*, 165 Wash. 548, 5 P. (2d) 1003.

■ ■ We turn now to appellants' assignments of error which pertain to the granting of a new trial for the refusal of the court to give respondents' requested instructions.

The respondents' requested instruction No. 1, based upon the statutory definition of hours of darkness set forth in Rem. Rev. Stat., Vol. 7A, § 6360-1 [P. C. § 2696-767] (s), was as follows:

"You are instructed that certain provisions are made by statute as to lighting requirements during hours of darkness. That 'hours of darkness' is defined by statute as follows:

" 'Whenever used in this act, shall mean the hours from one-half hour after sunset to one-half hour before sunrise, *and any other time* when persons or objects may not be clearly discernible at a distance of 500 feet.' "

And, in connection with the foregoing, respondents requested their instruction No. 3:

"You are instructed that whenever a vehicle is parked or stopped upon a roadway or shoulder adjacent thereto, whether attended or unattended, during hours of darkness such vehicle shall display not less than two lamps, one on either side exhibiting a white light visible from a distance of five hundred feet to the front of such vehicle and not less than one continuous

red light on the left side visible from a distance of five hundred feet to the rear."

All of requested instruction No. 3 following the words "You are instructed that" is a verbatim quotation from Rem. Rev. Stat., Vol. 7A, § 6360-19 [P. C. § 2696-803]. As we have pointed out, there was a direct conflict in the testimony as to whether or not the lights on appellants' truck were burning when it stopped on the street just before the collision. All the witnesses on both sides were agreed that, on account of the fog, the visibility was much less than five hundred feet. It was, therefore, the statutory duty of appellant driver to turn on the lights before he stopped the truck on the roadway, and the respondents were entitled to have the jury so informed by the court.

Appellants do not contend otherwise. Their position is that requested instruction No. 1 would be meaningless without instruction No. 3, and that the latter was not correctly worded. It would have advised the jury, in effect, they say, that appellants were required by law to have a tail light on the trailer which was visible through the fog from a distance of five hundred feet to the rear—a manifest impossibility.

Under the circumstances, we think respondents were entitled to an instruction substantially in the language of the statute. No issue was raised at the trial as to whether or not appellants' trailer tail light was of sufficient brightness or intensity to meet the statutory requirement. The only conflict in the testimony on that phase of the case was as to whether the tail light was on or off. The jury should have been instructed that the law required it to be on. Nor do we think that the jurors would have been misled by the form of the requested instruction. Surely, we should not assume that they would have been so stupidly impractical as to conclude that the language of the statute em-

bodied in the proposed instruction requires motor vehicles to be equipped with tail lights capable of being seen from a point five hundred feet to the rear under all conditions, regardless of intervening physical obstacles to light, such as fog, falling snow, or other vehicles traveling on the highway.

A somewhat similar situation, with reference to a requested instruction, was presented in *Schmidt v. Pelz,* 198 Wash. 80, 87 P. (2d) 278, an action by a workman to recover damages for personal injuries which he sustained when he fell from the roof of defendants' house while engaged in cleaning the gutters. The defendants requested an instruction to the effect that, if defendant Pelz had warned plaintiff not to commence the work until the former got home, and the latter disregarded the warning, he " *'assumed the risk* in proceeding with said work and he cannot recover.' " The trial court refused the requested instruction and such refusal was held to constitute error so prejudicial as to necessitate reversal. This court conceded, in the majority opinion, that the words " *'assumed the risk'* " were "technically incorrect," but concluded that the defendants were entitled to an instruction "in substance as requested, covering the issue presented," the general rule being that "disobedience by an employee of reasonable rules or orders of the employer constitutes such negligence as will preclude recovery." And, we said, p. 83:

"In so holding, we have no intention of departing from the rule that requested instructions must be in substance correct statements of the law on the issue covered in order that error may be predicated on refusal to give them. But we think that to hold the request insufficient because disobedience of the order was described as an assumed risk, rather than as contributory negligence, would be sacrificing substance to form."

Finally, appellants contend that, in any event, the trial court's refusal to give the proposed instructions did not prejudice the respondents.

The verdict which the jury returned reads: "We, the jury empaneled and sworn to try the above entitled cause do find for defendants. By reason of contributory negligence." Appellants assert that the respondents' proposed instructions relative to lights pertained solely to the question of appellants' negligence, and, therefore, adopting the language of their brief:

". . . as long as the jury found the plaintiffs negligent, of course it makes no difference how negligent the defendants were. Showing that the defendants were negligent in several matters would be no help to the plaintiffs. Contributory negligence precludes their recovery."

Appellants have cited no decision of this court directly in point. Rem. Rev. Stat., § 362 [P. C. § 8526], defines general and special verdicts as follows:

"The verdict of a jury is either general or special. A general verdict is that by which the jury pronounces generally upon all or any of the issues either in favor of the plaintiff or defendant. A special verdict is that by which the jury finds the facts only, leaving the judgment to the court."

Rem. Rev. Stat., § 364 [P. C. § 8528], provides:

"In every action for the recovery of money only, or specific real property, the jury, in their discretion, may render a general or special verdict. In all other cases, the court may direct the jury to find a special verdict in writing upon all or any of the issues, and in all cases may instruct them, if they render a general verdict, to find upon particular questions of fact to be stated in writing, and may direct a written finding thereon."

The verdict in the present case was a general verdict in favor of the appellants. The court did not direct the jury to find upon any particular question of fact.

The record shows that the court furnished the jury two blank forms of verdict—one in favor of the respondents and the other in favor of the appellants; and that the latter, in the words of the court's instructions, was one "simply finding in favor of the defendants [appellants]." The phrase on the verdict, "By reason of contributory negligence," then, was a notation added by the jury to its general verdict. How should such a notation be regarded by this court?

*Martin v. Nichols,* 110 Wash. 451, 188 Pac. 519, was an action by an attorney to recover from defendant the value of legal services alleged to have been rendered. The jury returned this verdict:

" 'We, the jury, duly empanelled and sworn to try the issues of the above entitled cause, find for the plaintiff in the sum of $725.00 Dollars.

" 'Administrators fees left for court to decide.' "

The defendant contended that the verdict was ambiguous and should not have been received by the trial court. Judge Tolman, speaking for this court, pointed out that one issue of fact submitted to the jury was whether or not the defendant had assumed and agreed to pay the plaintiff for services rendered for an administrator, and the words which the jury had appended to the verdict merely indicated that it had found in defendant's favor on that issue; hence, he had no cause to complain. But Judge Tolman added: "In any event, the words referred to are no more than surplusage which does not vitiate, and the court was right in disregarding them."

In *Pearson v. Arlington Dock Co.,* 111 Wash. 14, 189 Pac. 559, a personal injury action against joint *tortfeasors,* the jury returned the following verdict:

" 'We, the jury in the above entitled cause, do find for the plaintiff and against both defendants in the

sum of $3,750 each Arlington Dock Co., North Coast Stevedoring Co., Dollars ($7,500).' "

It was contended that the verdict was irregular and void. This court said, p. 20:

"While the verdict is somewhat awkward, it is perfectly plain that the jury meant to find a verdict of $7,500 for the plaintiff against both defendants, each defendant to pay one-half of that amount. The jury did not have any right to segregate this amount and make each defendant liable for a portion thereof, consequently that portion of the verdict where the jury undertakes to do so must be considered surplusage."

In *Lindsey v. Elkins,* 154 Wash. 588, 283 Pac. 447, a jury, by its verdict, attempted to segregate and apportion the damages awarded against joint *tort-feasors,* and this court, following *Pearson v. Arlington Dock Co., supra,* disregarded as surplusage that portion of the verdict which pertained to such attempted segregation.

The verdict brought in by the jury in *Bino v. Veenhuizen,* 141 Wash. 18, 250 Pac. 450, read: " 'We the jury in the above entitled cause do find for the defendant. Not guilty.' " The trial court regarded the verdict as defective, and sent the jury back to the jury room to correct it. The jurors were unable to agree and ultimately were discharged without returning any other verdict. This court held that the trial court had the right to decline to accept the verdict as an informal one under Rem. Rev. Stat., § 360 [P. C. § 8522], which provides: "If the verdict be informal or insufficient, it may be corrected by the jury under the advice of the court, or the jury may again be sent out." This court pointed out that the quoted statute does not *require* a trial court to send a jury back for further deliberation in cases where the verdict is informal or

defective, but *authorizes* such action if, in the judgment of the court, it should be done. We call attention to the following language of the opinion, p. 20:

"Appellant urges that the verdict was one that should have been received by the trial court, inasmuch as the words 'Not guilty' contained therein were mere surplusage. That it was one that the court could have received must be admitted; for, by our previous decisions, if the verdict be such as shows the plain intent of the jury, and is sufficient under the issues, the court may accept and record the same and treat the informal parts as surplusage [citing *Martin v. Nichols, supra,* and *Pearson v. Arlington Dock Co., supra*]."

Conceivably, informal language injected into a general verdict by a jury may be of such a character as to render it fatally vague, ambiguous, or contradictory; but, where the intent of the jury is clearly indicated and the verdict is otherwise sufficient, the informal portions should be disregarded as surplusage. Treating gratuitous, explanatory remarks which a jury may append to its general verdict as a special finding of fact, or as a guide in determining how the jury may have resolved the factual issues, would invite surmise and conjecture and lead to uncertainty and confusion.

In the case at bar, for example, it is not possible to determine just what was meant by the notation on the verdict, "By reason of contributory negligence." Did the jury find that one or the other or both of the respondents were guilty of contributory negligence? And what acts of contributory negligence did it find? Was it excessive speed, failure to apply the brakes, failure seasonably to turn to the left, or was it possibly failure to keep such a lookout and to drive at such a rate of speed as would have enabled respondents to stop in time to avoid running into an *unlighted* vehicle stand-

ing on the roadway, no instruction as to the statutory duty of such a vehicle to show lights during "hours of darkness" having been given?

A general verdict is the integrated final product of the jury's findings, and it can not readily be separated into its component elements. In the words of Edson R. Sunderland, professor of law of the university of Michigan, in his scholarly article in 29 Yale Law Review, 253, 258:

"The pecularity of the general verdict is the merger into a single indivisible *residuum* of all matters, however numerous, whether of law or fact. It is a compound made by the jury which is incapable of being broken up into its constituent parts. No judicial reagents exist for either a qualitative or a quantitative analysis. The law supplies the means for determining neither what facts were found, nor what principles of law were applied, nor how the application was made. There are therefore three unknown elements which enter into the general verdict: (a) the facts; (b) the law; (c) the application of the law to the facts."

Findings by a jury on special factual issues, in connection with a general verdict, should not be haphazard and informal, but should be made, if at all, as the statute above quoted (Rem. Rev. Stat., § 364) provides, at the direction of the court in answer to questions framed by the court and submitted to the jury in writing.

We think that, under the circumstances here presented, the informal language of the verdict should be disregarded as surplusage. We are in accord with the following statement which the trial court made in its memorandum opinion upon granting respondents' motion for a new trial:

"The failure of the Court to give this instruction [relative to lights] may not have influenced the jury but it easily could have and should have been given,

for which reason an order granting a new trial may be taken."

The order of the superior court granting a new trial is affirmed.

MAIN, MILLARD, BLAKE, and JEFFERS, JJ., concur.

BEALS, J. (dissenting)—In my opinion, the trial court erred in granting a new trial, because of its belief that error had been committed in refusing to give an instruction which respondent had seasonably requested. Examination of the record convinces me that, upon the record, questions were presented upon which the jury should pass, and, while I am in accord with the majority in holding that the words, "by reason of contributory negligence," which the jury wrote in its verdict, were mere surplusage, and are not entitled to consideration, I am of the view that the order granting a new trial should be reversed, with instructions to enter judgment upon the general verdict in favor of the defendants.

Respondents were entitled to an instruction to the effect that the law required that, under the atmospheric conditions shown by the evidence, the rear lights on appellants' truck should have been shining when appellants' driver parked the truck. Respondents were not, however, entitled to an instruction in the language of their requested instruction No. 3. Some of the language of the statute, as contained in the instruction which they requested, quoted in the majority opinion, was never intended to apply to a condition of fog, such as was present at the time of the accident. Had respondents simply requested the trial court to instruct the jury that, under the undisputed evidence concerning the presence of fog, a condition existed which required that the rear lights of the parked vehicle be turned on, they would have been entitled to such an instruction, and the refusal to give the same would

have been reversible error. However, when a party in specific language requests an instruction, if the instruction in the form requested is not correct, error may not be predicated upon the refusal to give the same.

In the recent case of *Hardinger v. Till*, 1 Wn. (2d) 335, 96 P. (2d) 262, we said:

"A party may not successfully urge as error the failure of a trial court to give a requested instruction if that instruction is not correct as an entirety. A requested instruction which is in part incorrect is properly refused."

In the case of *People v. Davis*, 64 Cal. 440, 1 Pac. 889, the supreme court of California, in considering an argument that the trial court had erred in not giving the jury certain instructions requested by the defendant, said:

"But when it is urged here that the court below erred in rejecting an instruction requested, we are justified in reversing the judgment only when it appears that it was the duty of the court to give the instruction exactly as requested. It has been repeatedly held that if any part of a single instruction ought not to have been given, the action of the trial court in rejecting the whole will be affirmed; and this result must follow when any part of a single instruction is so worded as that it may have a tendency to mislead the jury, as well as when a part directly declares that to be law which is not law."

This case and others to the same effect are referred to in 8 California Jurisprudence 630, § 606.

It seems to me that the jury might well have been misled by a definite instruction to the effect that the law obligated the truck to display a red light visible from a distance of five hundred feet to the rear. In many cases, probably in the case at bar, this, in cases of fog, is an impossible requirement. The statute referred to contemplates a red light visible under normal

conditions from a point five hundred feet to the rear of the vehicle.

As stated in the majority opinion, all the witnesses testified that, at the time of the accident, the visibililty was restricted to a distance much less than five hundred feet.

While agreeing with the majority that under the statute respondents were entitled to an instruction, if they requested one, to the effect that it was the duty of the driver of appellants' truck to turn on the lights before he parked the truck on the highway, I am also of the opinion that respondents were not entitled to have an instruction given in the language which they requested, and, having limited their request to the particular instruction which respondents presented to the court, they were not thereafter entitled to obtain a new trial because the trial court refused to give that instruction.

I accordingly dissent from the conclusion reached by the majority.

STEINERT, J., concurs with BEALS, J.

SIMPSON, J. (dissenting)—I concur in the dissenting opinion of Judge Beals except that portion contained in the first paragraph. I desire, however, to express my additional views relative to the holding of the majority.

Respondent R. B. Rowe testified that on the morning of the accident he did not drive at a speed greater than twenty-five miles per hour; that, when he arrived at the point where his visibility was restricted by the fog and he could only see about forty feet ahead, he slowed down to fifteen miles per hour; (This was at the "Y," the intersection of the new and the old Pacific highway.) that beyond this point the fog got very bad until at the point of collision he could see less than ten feet ahead of his car; that he did "ease up on the gas";

and that he slowed down to between fourteen and fifteen miles per hour. It is interesting to note that he did not apply his brakes or take any precautionary measure other than to reduce his speed less than one mile per hour by easing his foot on the gas pedal.

It seems perfectly clear that, under the extremely dangerous condition present, the jury were convinced that respondent, as an ordinarily careful and prudent man, would not have driven at the rate of speed as great as fourteen or fifteen miles per hour. The jury were evidently convinced that appellant was negligent, so there was no cause to give the requested instructions. Appellant could not have been more guilty of negligence. There are no degrees of ordinary negligence. The error in refusing to give the requested instructions was entirely harmless. 5 C. J. S. 1165, § 1776.

I am unable to agree that the portion of the verdict which stated that the jury found for defendant "by reason of contributory negligence" was surplusage. The verdict was received by the court and filed with the clerk without any objection on the part of respondent, and should be accorded full credit.

"General verdicts are to be given a reasonable intendment, are to have every reasonable presumption made in their support, and are to be construed liberally and reasonably, with a view to sustaining the verdict and effectuating the intention of the jury if possible."

64 C. J. 1104, Trial, § 907.

The verdict of the jury in this case reflected the intent of the members of the jury in unmistakable language. That intent should be carried into the judgment.

For the reasons given, I dissent.

ROBINSON, C. J., concurs with SIMPSON, J.